499 S.E.2d 238

**Linda L. ETHEREDGE, as Personal Representative of the
Estate of Ernest Dunlap, III, Deceased, Appellant,**

v.

**RICHLAND SCHOOL DISTRICT I, Respondent.**

**No. 2823.**

Court of Appeals of South Carolina.

Heard March 4, 1998.
Decided March 30, 1998.
Rehearing Denied May 21, 1998.

Henry Hammer and John W. Carrigg, Jr., of Hammer, Hammer, Carrigg & Potterfield; and Douglas N. Truslow, Columbia, for Appellant.

Donald V. Richardson, Georgia Anna Mitchell, Charles E. Carpenter, Jr., and Tara S. Taggart, all of Richardson, Plowden, Carpenter & Robinson, Columbia, for Respondent.

ANDERSON, Judge:

Linda L. Etheredge, as personal representative of the estate of Ernest Dunlap, III (Etheredge), appeals from the trial court's order granting summary judgment to Richland School District I (School District). We reverse and remand.

## FACTS/PROCEDURAL BACKGROUND

On January 25, 1994, Floyd Brown, a student at Eau Claire High School, shot and killed Dunlap, a student at the school.

Dunlap was shot while standing in the hallway during class change. Eau Claire High School is in the Richland County School District.

Etheredge, as personal representative of Dunlap's estate, filed this action against the Richland County School District alleging causes of action for wrongful death and survival damages arising from the shooting death of Dunlap. In the complaint, Etheredge maintained that, as Dunlap lay "in agony and pain on the floor from the gunshot wounds, [Adrian Hammond] ruthlessly and violently kicked [Dunlap] about the head and face until blood flowed from his mouth and nose." The School District averred the actions were barred by the South Carolina Tort Claims Act.[1] The School District moved for summary judgment. At the summary judgment hearing, the School District submitted the affidavits of two Eau Claire High School employees: (1) Dorothy Walker, a teacher and (2) Ellen Mosely, the principal at the time of the shooting. Etheredge submitted the affidavit of Harland Brown, one of the campus monitors employed by the school.

According to Mosely, "[o]n January 20, 1993, school officials did find a pistol in Earnest [sic] Dunlap's possession." Further, "[o]n January 25, 1994, Adrian Hammond was on suspension. [Mosely] had not given [her] approval for Adrian Hammond to be present on campus that day."

Brown worked as a campus monitor at Eau Claire High School from September of 1993 until February of 1994. Brown's job encompassed "breaking up fights and preventing drugs and alcohol on the premises at the high school, to keep the hallways clear and provide security for the school." The School District employed only two campus monitors to enforce security inside and outside Eau Claire High School, which housed a student body of approximately 800–1000 students on three floors.

Brown received no training from the School District or Eau Claire High School regarding maintaining safety and security at the school. Further, Brown was not provided the proper equipment "to handle the situation that existed with the students." According to Brown, the School District had no

---

1. S.C.Code Ann. § 15–78–10, *et seq.* (Supp.1997).

policies, procedures, or other methods in effect to maintain control of the school or to ensure the safety and security of the students. If such policies existed, they were never communicated to Brown. He stated, in order to properly perform his duties involving security on the campus and inside the school, he "would have needed to have been given equipment such as a uniform; a badge to display authority; possibly a side arm; certainly a night stick; flash light; chemical mace; handcuffs and/or other restraining devices and appropriate communication equipment." The only equipment supplied to Brown was a walkie-talkie.

Odell Sumter, the other campus monitor, "was as ill-equipped to enforce the security" as was Brown. Brown declared he asked the principal and assistant principals, on numerous occasions, to provide appropriate equipment, such as night sticks and mace, to assist him in doing his job. Neither Brown nor Sumter received any of the requested equipment. They were told to "do the best [they] could." Brown was "never given the authority to search the persons, book bags or lockers of the students even though that would have been necessary for [him] to properly provide security in the building."

In his affidavit, Brown averred:

At and around the time the shooting occurred, the situation at Eau Claire High School was very volatile. I observed students curse at teachers; I observed students push and shove teachers; students were bringing weapons such as knives on campus; I regularly smelled the odor of marijuana and alcohol in the hallways; I regularly saw liquor bottles almost daily at the school. I once witnessed five (5) guys rush into a classroom and jump on one of the students while class was in session. At least twice a week, I would observe students in a drunken state; on a daily basis, I observed students under the influence of drugs and/or alcohol. On one occasion, I witnessed students involved in explicit sexual activity on the school grounds. I reported all of this and still nothing was done.

Students apprehended for criminal activity were never disciplined in a manner consistent with the severity of their offense. Usually, they were given detention or some other

minor punishment. Brown asserted "the students were in control of the school" and the "security was totally ineffective." Two people "were charged with trying to maintain security on three (3) halls, on three (3) different floors with almost one thousand (1,000) students, and [they] were also charged with maintaining security for the remainder of the campus." He stated his job was "almost impossible to do and the later shooting of Ernest Dunlap was an inevitability given the situation at the school at that time."

The trial court granted summary judgment to the School District based on S.C.Code Ann. § 15–78–60 (Supp.1996). The court explicitly relied upon five subsections of § 15–78–60: subsections (4), (5), (9), (20), and (25). Etheredge filed a motion to reconsider, which the court denied.

## ISSUE

Did the trial court err in granting summary judgment to the School District?

## STANDARD OF REVIEW

Summary judgment is appropriate when it is clear there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Summer v. Carpenter*, 328 S.C. 36, 492 S.E.2d 55 (1997); *True v. Monteith*, 327 S.C. 116, 489 S.E.2d 615 (1997); Rule 56(c), SCRCP. *See also Standard Fire Ins. Co. v. Marine Contracting and Towing Co.*, 301 S.C. 418, 392 S.E.2d 460 (1990) (motion for summary judgment shall be granted if pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact and moving party is entitled to judgment as matter of law). In determining whether any triable issue of fact exists, as will preclude summary judgment, the evidence and all inferences which can be reasonably drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Summer*, *supra*; *Koester v. Carolina Rental Ctr., Inc.*, 313 S.C. 490, 443 S.E.2d 392 (1994); *Pye v. Aycock*, 325 S.C. 426, 480 S.E.2d 455 (Ct.App.1997). *See also Bates v. City of Columbia*, 301 S.C. 320, 391 S.E.2d 733 (Ct.App.1990) (in determining whether to grant summary judgment, pleadings and documents on file

must be liberally construed in favor of nonmoving party who must be given benefit of all favorable inferences that might reasonably be drawn from record). If triable issues exist, those issues must go to the jury. *Rothrock v. Copeland,* 305 S.C. 402, 409 S.E.2d 366 (1991).

Summary judgment is not appropriate where further inquiry into the facts of the case is desirable to clarify the application of the law. *Tupper v. Dorchester County,* 326 S.C. 318, 487 S.E.2d 187 (1997); *Baugus v. Wessinger,* 303 S.C. 412, 401 S.E.2d 169 (1991). Even when there is no dispute as to evidentiary facts, but only as to the conclusions or inferences to be drawn from them, summary judgment should be denied. *Tupper, supra; Koester, supra, Gilliland v. Elmwood Properties,* 301 S.C. 295, 391 S.E.2d 577 (1990). *See also Hamilton v. Miller,* 301 S.C. 45, 389 S.E.2d 652 (1990) (trial court should deny summary judgment if there is genuine issue as to conclusions or inferences to be drawn from undisputed evidentiary facts). However, when plain, palpable, and indisputable facts exist on which reasonable minds cannot differ, summary judgment should be granted. *Trico Surveying, Inc. v. Godley Auction Co.,* 314 S.C. 542, 431 S.E.2d 565 (1993); *Rothrock, supra; Pye, supra.* All ambiguities, conclusions, and inferences arising from the evidence must be construed most strongly against the movant. *True, supra; Tupper, supra; Baugus, supra.*

The party seeking summary judgment has the burden of clearly establishing the absence of a genuine issue of material fact. *Baughman v. American Tel. and Tel. Co.,* 306 S.C. 101, 410 S.E.2d 537 (1991); *Standard Fire Ins. Co., supra.* For summary judgment to be granted, it must be perfectly clear no issue of fact is involved. *Piedmont Engineers, Architects and Planners, Inc. v. First Hartford Realty Corp.,* 278 S.C. 195, 293 S.E.2d 706 (1982). *See also State ex rel. McLeod v. Brown,* 278 S.C. 281, 294 S.E.2d 781 (1982) (summary judgment should be granted only where it is perfectly clear no issue of fact is involved). With respect to an issue upon which the nonmoving party bears the burden of proof, this initial responsibility may be discharged by showing the trial court there is an absence of evidence to support the nonmoving party's case. *Baughman, supra.* The moving party need not

support its motion with affidavits or other similar materials negating the opponent's claim. *Id.*

Once the party moving for summary judgment meets the initial burden of showing an absence of evidentiary support for the opponent's case, the opponent cannot simply rest upon mere allegations or denials contained in the pleadings. *Id.; SSI Medical Servs., Inc. v. Cox,* 301 S.C. 493, 392 S.E.2d 789 (1990); *NationsBank v. Scott Farm,* 320 S.C. 299, 465 S.E.2d 98 (Ct.App.1995). Rather, the nonmoving party must come forward with specific facts showing there is a genuine issue for trial. *Baughman, supra;* Rule 56(e), SCRCP. *See also Klippel v. Mid–Carolina Oil, Inc.,* 303 S.C. 127, 399 S.E.2d 163 (Ct.App.1990) (when party moves for summary judgment and supports motion by affidavits, adverse party may not rest on allegations of pleadings but must respond by affidavits or other evidence demonstrating genuine issue of material fact).

The plain language of Rule 56(c), SCRCP, mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who falls to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial. *Baughman, supra.* In such a situation, there can be no genuine issue as to any material fact since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Id.* The moving party is entitled to judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of the case. *Id.*

Because it is a drastic remedy, summary judgment should be cautiously invoked so no person will be improperly deprived of a trial of the disputed factual issues. *Id.*

### LAW/ANALYSIS

Etheredge contends the trial court erred in granting summary judgment in favor of the School District. She asserts there are genuine issues of material fact concerning whether the School District was grossly negligent in the exercise of its duties, including but not limited to the supervision, protection and control of the students in its custody. Further, Ether-

edge maintains the actions are not barred by S.C.Code Ann. § 15–78–60(4), (5), (9), (20) and (25).

## I. Duty to Student Exercised in Grossly Negligent Manner

The South Carolina Tort Claims Act, S.C.Code Ann. § 15–78–10, *et seq.* (Supp.1997), which provides the exclusive remedy in tort against the School District, is a limited waiver of governmental immunity. *Moore v. Florence Sch. Dist. No. 1,* 314 S.C. 335, 444 S.E.2d 498 (1994). *See also* S.C.Code Ann. § 15–78–20(b) (Supp.1997) (while acting within scope of official duty, the State, its political subdivisions, and employees are immune from liability and suit for any tort except as waived by Tort Claims Act); S.C.Code Ann. § 15–78–40 (Supp.1997) ("The State, an agency, a political subdivision, and a governmental entity are liable for their torts in the same manner and to the same extent as a private individual under like circumstances, subject to the limitations upon liability and damages, and exemptions from liability and damages, contained herein.").

South Carolina Code Ann. § 15–78–60 (Supp.1997) sets out thirty-two exceptions to the waiver of sovereign immunity. Subsection (25) of § 15–78–60 provides a governmental entity is not liable for loss resulting from "responsibility or duty including but not limited to supervision, protection, control, confinement, or custody of any student ... *except* when the responsibility or duty is exercised in a *grossly negligent* manner." S.C.Code Ann. § 15–78–60(25) (Supp.1997) (emphasis added). *See also Clyburn v. Sumter County School Dist. # 17,* 317 S.C. 50, 451 S.E.2d 885 (1994) (quoting S.C.Code Ann. § 15–78–60(25) (Supp.1993)). The burden of establishing a limitation upon liability or an exception to the waiver of immunity is upon the governmental entity asserting it as an affirmative defense. *Strange v. South Carolina Dept. of Highways and Public Transp.,* 314 S.C. 427, 445 S.E.2d 439 (1994); *Doe by Roe v. Orangeburg County Sch. Dist. No. 2,* 329 S.C. 221 495 S.E.2d 230 (Ct.App.1997); *Wooten v. South Carolina Dep't of Transp. .,* 326 S.C. 516, 485 S.E.2d 119 (Ct.App.1997).

South Carolina courts have defined gross negligence in a number of ways. Gross negligence is the intentional, con-

scious failure to do something which one ought to do or the doing of something one ought not to do. *Clyburn, supra; Hollins v. Richland County Sch. Dist. One,* 310 S.C. 486, 427 S.E.2d 654 (1993); *Richardson v. Hambright,* 296 S.C. 504, 374 S.E.2d 296 (1988); *Ford v. Atlantic Coast Line R.R.,* 169 S.C. 41, 168 S.E. 143 (1932), *aff'd* 287 U.S. 502, 53 S.Ct. 249, 77 L.Ed. 457 (1933); *Brooks v. Northwood Little League, Inc.,* 327 S.C. 400, 489 S.E.2d 647 (Ct.App.1997); *Rakestraw v. South Carolina Dept. of Highways and Public Transp.,* 323 S.C. 227, 473 S.E.2d 890 (Ct.App.1996); *Smart v. Hampton County Sch. Dist. No. 2,* 315 S.C. 192, 432 S.E.2d 487 (Ct.App. 1993). Gross negligence is a relative term which means the absence of care that is necessary under the circumstances. *Hollins, supra; Hicks v.. McCandlish,* 221 S.C. 410, 70 S.E.2d 629 (1952); *Moore v. Berkeley County Sch. Dist.,* 326 S.C. 584, 486 S.E.2d 9 (Ct.App.1997); *Rakestraw, supra; Smart, supra.* It connotes the failure to exercise a slight degree of care. *Wilson v. Etheredge,* 214 S.C. 396, 52 S.E.2d 812 (1949); *Moore, supra; Grooms v. Marlboro County Sch. Dist.,* 307 S.C. 310, 414 S.E.2d 802 (Ct.App.1992). Gross negligence is the failure to exercise slight care. *Clyburn, supra; Hollins, supra; Richardson, supra; Anderson v. Ballenger,* 166 S.C. 44, 164 S.E. 313 (1932); *Doe, supra; Rakestraw, supra; Smart, supra.* Where a person is so indifferent to the consequences of his conduct as not to give slight care to what he is doing, he is guilty of gross negligence. *Grooms, supra; Jackson v. South Carolina Dep't of Corrections,* 301 S.C. 125, 390 S.E.2d 467 (Ct.App.1989), *aff'd* 302 S.C. 519, 397 S.E.2d 377 (1990). Gross negligence involves a conscious failure to exercise due care. *Jackson, supra.*

This Court addressed the "gross negligence" issue in *Grooms v. Marlboro County Sch. Dist.,* 307 S.C. 310, 414 S.E.2d 802 (Ct.App.1992). In 1986, Grooms was an educable, mentally handicapped, fifteen year old in the sixth grade. Pursuant to an individual education plan developed by the School District, Grooms, with his parents' consent, was placed in 1987 in the ninth grade at McColl–Fletcher Memorial High School in Marlboro County. After Grooms became a discipline problem, the School District tested him and decided to place him in a self-contained class for educable, mentally

handicapped students at Bennettsville High School. His parents approved the decision on October 22, 1987.

Grooms was to begin attending the new class on November 16, 1987. In the meanwhile, McColl–Fletcher's principal, who knew Grooms to be mentally handicapped and was aware of his disruptive behavior, instructed Grooms he could skip a class if he " 'felt like he was getting into a situation that was going to cause him trouble' " and that he was to report to a school janitor and " 'stay with him until he felt like he could go back into the class and behave.' " *Grooms*, 307 S.C. at 312, 414 S.E.2d at 804. On November 11, 1987, while in the company of a janitor and during a time when students were expected to be in class, Grooms and another student began wrestling in a hallway. The janitor did nothing to stop them from wrestling with each other, choosing instead to stand by and watch. Grooms was severely injured when he landed on top of his head. He stayed in the hospital for several weeks.

Grooms sued the School District under the South Carolina Tort Claims Act for injuries he received while under the supervision of the school janitor. The trial court granted summary judgment to the School District on the grounds (1) Grooms presented no evidence the School District exercised in a grossly negligent manner its duty to supervise students in its school and (2) the loss suffered by Grooms resulted from an exercise of discretion by the School District. In reversing and remanding, this Court decided:

> The trial court erred in concluding the record contains no evidence that the school district exercised in a grossly negligent manner its duty to supervise students in its school. *See* S.C.Code Ann. § 15–78–60(25) (Supp.1991)....
>
>     ....
>
> Here, the record contains evidence sufficient to create a genuine issue of fact regarding the question of whether the school district exercised in a grossly negligent manner its duty to supervise students in its schools. The school district's principal permitted [Grooms], a mentally-handicapped student with a behavior problem, to be supervised by a school janitor; it allowed [Grooms] himself to decide when he would be under a janitor's supervision; [Grooms], while under the supervision of a janitor and as the janitor stood

by and watched, wrestled with another student in a school hallway during a time when all students were expected to be in class; and [Grooms] was severely injured in the process. *Grooms*, 307 S.C. at 313–14, 414 S.E.2d at 804.

In *Doe by Roe v. Orangeburg County Sch. Dist. No. 2*, 329 S.C. 221, 495 S.E.2d 230 (Ct.App.1997), Doe, a fourteen year old student at Bowman High School in Orangeburg, reported to her guidance counselor she had been sexually assaulted on February 16, 1994, by a sixteen year old male special education student. On the morning of the assault, the male student and several other boys were cleaning the school gymnasium under the supervision of Coach Johnnie Culbreath. In response to a phone call from another school requesting information about Bowman's athletic department, Culbreath left the boys in the gym and drove to the district office to fax some documents.

While Culbreath was gone, Doe walked through the gym on the way to deliver an attendance sheet to the main office for her homeroom teacher. Doe alleged the male student pulled her into the girls locker room and raped her. Immediately thereafter, Doe went to a friend's classroom and told both the friend and the teacher about the incident. She then reported it to her guidance counselor, the principal, the assistant principal, and the school nurse. The assistant principal and school nurse accompanied Doe to the police department, and then to Orangeburg Regional Medical Center, where a rape-protocol exam was performed.

Doe filed an action against the School District for negligent supervision. The jury returned a verdict in favor of Doe for $20,000, and in favor of her mother, Mary Roe, for $20,000. On appeal, the School District argued there was insufficient evidence of its gross negligence to warrant submission of the case to the jury. This Court disagreed and held:

> The school district argues it exercised at least slight care in supervising its students and that it was not reasonably foreseeable that a male student would engage in a sexual assault upon another student. We disagree. It is undisputed that the male students were alone in the gym for at least fifteen minutes while the teacher charged with the responsibility of supervising left the school. The male student

involved in the attack was a special education student who had prior disciplinary violations at school, at least one of which involved the improper touching and feeling of girls.

Viewing the evidence in the light most favorable to Doe, we conclude there was sufficient evidence to create a jury question as to whether the school district acted in a grossly negligent manner.

*Doe,* 329 S.C. at 224, 495 S.E.2d at 232.

■ Here, the record contains evidence sufficient to create genuine issues of fact regarding the question of whether the School District exercised its duties, including but not limited to the supervision, protection, and control of the students in its custody, in a grossly negligent manner. First, in the answer, the School District admitted "that prior to this incident, Ernest Dunlap, III's actions toward the pupil who shot him created a belief by that pupil that such pupil was in imminent danger of losing his life or sustaining serious bodily injury."

Further, as demonstrated by Harland Brown's affidavit, there is a plethora of facts in dispute. At the time of the shooting, the School District employed only two campus monitors, who had no training or proper equipment to provide for the supervision, protection and control of approximately 800–1000 students at Eau Claire High School, which consisted of classrooms and hallways on three floors. Brown, one of two campus monitors at the school, stated that at and around the date the shooting occurred and for some time prior thereto, the situation at the high school was very volatile and the students essentially were in control. Brown observed students curse at and push and shove teachers. Students brought weapons, such as knives, on campus. On one occasion, Brown witnessed five male students rush into a classroom and assault one of the students while class was in session. Brown regularly smelled the odor of marijuana and alcohol in the hallways and saw liquor bottles nearly every day at the school. He observed students under the influence of drugs and/or alcohol on a daily basis and once witnessed students involved in explicit sexual activity on the school grounds.

Brown reported all of these incidents and conditions to the School District, but the School District took no action to

correct the situation. Students apprehended for criminal activity were never disciplined in a manner consistent with the severity of their offense. Usually, they were given detention or some other minor punishment, which Brown felt led to an air of instability and chaos. The School District had no policies, procedures or other methods in effect to maintain control of the school or insure the safety of the students. If such policies existed, they were never communicated to Brown.

According to Brown, the School District's efforts to maintain security at the school were totally ineffective. On numerous occasions, Brown requested equipment such as a uniform, a badge to display authority, a side arm, a night stick, a flashlight, chemical mace, and handcuffs or other restraining devices necessary for him to properly perform his job. The School District denied Brown's requests for equipment. Further, the School District failed to authorize Brown to search the students, their book bags, or lockers, all of which was necessary to provide proper security.

The School District relies on *Hammond v. Scott*, 268 S.C. 137, 232 S.E.2d 336 (1977), as the "most telling case" in support of its assertion the trial court properly granted summary judgment to the School District. In *Hammond*, Scott, a student in a woodworking shop class at school, attempted to throw a nail into a trash barrel. Instead, the nail struck Hammond, a fellow student, in the eye. At the time of the incident, the teacher was in an adjacent room. On previous occasions, students had thrown objects into the trash barrel from a few feet away. The practice was not sanctioned by the teacher and any student caught throwing objects into the trash barrel would be called down. All of the students knew this was a forbidden act and Scott had been admonished once before. The teacher had instructed the students to drop items into the trash barrel rather than throw them at it.

Hammond filed a negligence action against Scott and the shop teacher. The trial court granted summary judgment to the teacher. The Supreme Court affirmed the trial court and concluded there was only one reasonable inference arising from the evidence: the teacher acted reasonably under the

circumstances and therefore was, as a matter of law, not negligent.

*Hammond* is distinguishable from the case *sub judice.* First, *Hammond* was not decided under the Tort Claims Act. Second, there were no ill feelings between Scott and Hammond. Third, Hammond stated the occurrence was an accident.

Further, the School District cites *Clyburn v. Sumter County Sch. Dist. # 17,* 317 S.C. 50, 451 S.E.2d 885 (1994), in which the Supreme Court affirmed the granting of summary judgment to the School District in a Tort Claims Act case. Fernaudra Clyburn, a high school student, filed a negligence action, pursuant to the Tort Claims Act, against the School District for injuries she received when a nonstudent, Johnnie Mae Witherspoon (Assailant), attacked her with a knife on the school bus. The trial court granted summary judgment to the School District finding the facts viewed in the light most favorable to Clyburn showed school officials exercised, at the very least, slight care and the School District could not be held liable. In affirming, the Supreme Court held the School District was not grossly negligent in its handling of the dispute and, thus, under the governmental immunity statute, the School District was not liable for Clyburn's injuries.

The factual circumstances here are readily distinguishable from *Clyburn.* In *Clyburn,* the School District intervened approximately ten times. Here, the School District did not intervene, nor did it take any action to guard against Dunlap being injured by Brown. The school itself created a risky atmosphere by failing to provide adequate security measures.

Clyburn and Sylvia Witherspoon were high school student passengers on a Sumter County School District bus. On Thursday, October 25, 1990, an altercation between Clyburn's niece and Sylvia ensued after Sylvia exited the bus. The first instance of intervention occurred when the bus driver refused to allow Clyburn to get off the bus at that stop, but permitted her to exit at her regular stop. Clyburn returned to the area where her niece and Sylvia had been arguing and encountered, among others, Johnnie Mae Witherspoon (Assailant), the nonstudent adult sister of Sylvia. A fight then ensued between Clyburn and Assailant.

The next morning, Assailant and her mother boarded the bus. The second act of intervention occurred when the driver, after noticing the two on the bus, immediately told them to leave. They ignored the driver's orders, however, and proceeded to where Clyburn was seated and threatened her. The third example of intervention happened when the driver followed and again ordered them to exit the bus. As the mother and Assailant left the bus, the driver heard Assailant threaten Clyburn, "Bitch, we will meet again." The fourth instance of intervention occurred when, upon arrival at school, the driver told Lamar Atkins, the District's Director of Transportation Services, about the incident and that Assailant had told Clyburn they would meet again. Atkins also was told of the Thursday afternoon incident. Upon hearing of the altercation between Assailant and Clyburn, Atkins immediately took many steps to control the situation.

As a fifth example of the School District's intervention, Atkins called Clyburn and Sylvia, Assailant's younger sister, into his office and admonished them for their behavior. He warned Sylvia if her sister tried to board the bus again, her sister would face criminal charges. Sixth, he attempted to telephone their parents to inform them of their children's unacceptable behavior and potential consequences of that behavior. Clyburn's mother was at work and her employer refused to let her take a non-emergency call. Sylvia's mother's number was disconnected. Seventh, Atkins told Clyburn and Sylvia he needed to speak with their parents quickly to resolve the matter without having to pursue criminal charges. Clyburn stated Atkins assured her after the Friday incident he would take care of the matter.

Eighth, on Friday afternoon, Atkins called the assistant principal at Clyburn's niece's school and asked him to direct the child to stay away from the bus stop where the initial altercation began. Atkins did not attempt further contact with the students' parents that weekend. Additionally, neither of the students' parents contacted Atkins over the weekend. Atkins did not notify the police the first time he was informed Assailant boarded the bus because he had successfully dealt with similar incidents in the past without involving the police and felt he could do so in this situation. Ninth, after the incident, the bus driver kept a lookout for Assailant on her

bus route and stated if Assailant was at a stop, she would continue to the next stop.

The following Monday, Assailant did not appear on the bus route. On Tuesday morning, however, Assailant boarded the bus, escaping the driver's immediate recognition. Tenth, when the driver saw Assailant walking down the aisle, the driver tried to follow Assailant to remove her from the bus, but was unable to stop Assailant before she cut Clyburn. Clearly, *Clyburn*, as a result of the School District's numerous attempts to intervene, is distinguishable.

The karma of the appeal by Etheredge involves the efficacy of the affidavit of Harland Brown. The School District contends this Court should not consider Brown's affidavit because it was not timely served. At the hearing, the School District objected to the admissibility of the affidavit. However, the trial court did not rule on the affidavit's admissibility and the School District did not file a post-trial motion. Therefore, this issue is not preserved for appeal. *See Townsend v. City of Dillon*, 326 S.C. 244, 486 S.E.2d 95 (1997) (issue not ruled upon by trial judge is not preserved for appellate review); *Noisette v. Ismail*, 304 S.C. 56, 403 S.E.2d 122 (1991) (where trial court does not explicitly rule on question and appellant fails to make Rule 59(e), SCRCP, motion to alter or amend judgment on that ground, issue is not properly before appellate court and should not be addressed); *Talley v. South Carolina Higher Educ. Tuition Grants Comm.*, 289 S.C. 483, 347 S.E.2d 99 (1986) (if issue is presented to trial court but not ruled upon, omission must be brought to trial court's attention by Rule 59(e), SCRCP, motion for issue to be preserved for review).

Gross negligence is a mixed question of law and fact and should be presented to the jury unless the evidence supports only one reasonable inference. *Clyburn v. Sumter County Sch. Dist. # 17*, 317 S.C. 50, 451 S.E.2d 885 (1994); *Doe by Roe v. Orangeburg County Sch. Dist. No. 2*, 329 S.C. 221, 495 S.E.2d 230 (Ct.App.1997). Viewing the evidence in the light most favorable to Etheredge, we conclude there was sufficient evidence to create a jury question as to whether the School District acted in a grossly negligent manner.

## II. Juxtaposing Subsections (4), (5), (9) and (20) against Subsection (25)

■ Etheredge argues this action is not barred by subsections (4), (5), (9), or (20) of § 15–78–60. In granting summary judgment to the School District, the trial court relied on the foregoing provisions of § 15–78–60, in addition to subsection (25). The court held any of the grounds would independently justify the grant of summary judgment.

■ Where an action is brought against a governmental entity for injuries or death allegedly caused to a student by the entity's gross negligence in the exercise of its duty of supervision, protection and control of the students in its custody in accordance with subsection (25) of § 15–78–60, all other subsections of § 15–78–60 providing exceptions to the waiver of governmental immunity, must be read in light of subsection (25), which provides an exception to immunity where the governmental entity exercises its responsibilities or duties in a grossly negligent manner. *See Jackson v. South Carolina Dep't of Corrections,* 301 S.C. 125, 390 S.E.2d 467 (Ct.App.1989), *aff'd* 302 S.C. 519, 397 S.E.2d 377 (1990). In arguing for this Court to affirm the trial court's order, the School District relied upon subsection (4) providing immunity for loss resulting from the adoption, enforcement, or compliance with any law or failure to adopt or enforce any law, including, but not limited to, any charter, provision, ordinance, resolution, rule, regulation, or written policies; subsection (5) providing immunity for loss resulting from the exercise of discretion; subsection (9) providing immunity for loss resulting from entry onto the entity's property where authorized by law; and subsection (20) providing immunity for loss resulting from an act or omission of a person other than an employee, including but not limited to the criminal actions of third persons.

In *Jackson, supra,* an action for wrongful death and survival under the South Carolina Tort Claims Act, the administrator of the estate of Stroman W. Jackson brought suit against the South Carolina Department of Corrections after Jackson, an inmate, was killed by Atkinson, a fellow inmate, while incarcerated at Kirkland Correctional Institution. The jury found for Jackson on both causes of action. The Department moved

for a judgment notwithstanding the verdict, which the court granted.

On appeal, the Court of Appeals reversed and remanded. This Court concluded sufficient evidence supported a finding the transfer of Atkinson from one institution to another, where he killed Jackson, was the result of gross negligence. Further, the Court held:

> The Department argues that even if Atkinson's transfer was an act of gross negligence, it is still immune from liability under Section 15–78–60(5). That section provides for immunity from liability for losses resulting from "... the exercise of discretion or judgment by the governmental entity or employee...."

> While Atkinson's transfer was admittedly an act requiring the discretion and judgment of the Department, Section 15–78–60(25) provides an exception to immunity where the governmental entity exercises its responsibility or duty in a grossly negligent manner. Section 15–78–60(5) must be read in light of this exception. *If discretion is exercised in a grossly negligent manner, the exception to the normal rule of immunity applies.*

*Jackson*, 301 S.C. at 127–28, 390 S.E.2d at 469 (emphasis added).

In *Grooms v. Marlboro County Sch. Dist.*, 307 S.C. 310, 414 S.E.2d 802 (Ct.App.1992), a mentally handicapped student sued the School District for injuries he received while under the supervision of the school janitor. The trial court granted summary judgment to the School District on the ground of discretionary immunity. This Court determined:

> The trial court also erred in holding that the loss suffered by [Grooms] resulted from an exercise of discretion by the school district, thus immunizing the school district from liability in accordance with S.C.Code Ann. § 15–78–60(5) (Supp.1991). It viewed the decision by the principal to allow a janitor to have supervision over [Grooms] whenever [Grooms] chose for the janitor to have it as a "judgment call."

> Discretionary immunity is an affirmative defense. The burden, therefore, was upon the school district to show that it not only actually weighed competing considerations and

alternatives regarding the question of what to do with [Grooms] in this particular instance but that, in doing so, it utilized accepted professional standards appropriate to resolve the question. The record contains no evidence that the school district did this.

*Moreover, irrespective of whether the decision to place [Grooms] under the supervision of a janitor involved a proper exercise of discretion, there still remains the question of whether the janitor supervised him in a grossly negligent manner.* There is evidence ... that the janitor was in fact grossly negligent.

*Grooms,* 307 S.C. at 314, 414 S.E.2d at 804–05 (citations omitted) (emphasis added).

In *Woodell v. Marion School Dist. One,* 307 S.C. 297, 414 S.E.2d 794 (Ct.App.1992), Shirley Allen, as guardian ad litem for Karen Christine Woodell, a student who was assaulted at school by another student, sued the School District pursuant to the Tort Claims Act alleging the School District was grossly negligent in supervising both Woodell and her assailant. The trial court granted the School District's Rule 12(b)(6), SCRCP, motion to dismiss and held § 15–78–60(20) immunized the School District from liability for a loss caused by a third party's criminal action. This Court reversed and remanded. We explained:

Here, the complaint does not seek to pin liability on the school district because of the alleged criminal action of the other student; rather, as we noted above, it focuses on the school district's alleged gross negligence in supervising Woodell and the student who allegedly attacked Woodell. *Cf. Greenville Memorial Auditorium v. Martin,* 301 S.C. 242, 391 S.E.2d 546 (1990) (the trial judge committed no error in not dismissing an action under section 15–78–60(20) where a patron at a rock concert was struck by a bottle thrown from a balcony of a municipal auditorium because the complaint did not allege the municipality was liable for the criminal act of a third party but alleged the municipality and its employees were negligent in securing and maintaining the premises during the concert). A governmental entity may be liable to a student for a loss when the entity's responsibility to supervise, protect, or control a student "is exercised in a grossly negligent manner." S.C.Code Ann.

§ 15–78–60(25) (Supp.1990). Whether in fact Woodell's loss resulted from the school district's alleged grossly negligent supervision of Woodell and the other student or from the alleged criminal action of the other student is not a question that the trial court should have decided on a motion to dismiss.

*Woodell,* 307 S.C. at 298, 414 S.E.2d at 794–95.

Etheredge cites *Greenville Memorial Auditorium v. Martin,* 301 S.C. 242, 391 S.E.2d 546 (1990), in which a patron at a rock concert was struck by a glass bottle thrown from the balcony of the city auditorium. The governmental entity sought dismissal under S.C.Code Ann. § 15–78–60(20) (1986). In affirming the trial court's refusal to dismiss, our Supreme Court stated:

Section 15–78–60(20) provides that a governmental entity is not liable for a loss resulting from the act or omission of a person other than an employee including, but not limited to, the criminal acts of third persons. Appellant asserts the trial judge erred in failing to dismiss the action under this section because there was no evidence appellant's employees caused respondent's injuries and because such injuries were caused by the criminal acts of a third person.

Here, respondent's complaint alleged appellant and its employees were negligent in adequately securing and maintaining the premises during the concert and this negligence created a reasonably foreseeable risk of such third party conduct. Respondent's complaint did not allege appellant was liable because of the criminal act of a third party. Consequently, Section 15–78–60(20) would not operate to exonerate appellant of liability for its own conduct.

Appellant cannot successfully defend that respondent's injuries were caused by the wrongful criminal act of a third party, where the very basis upon which appellant is claimed to be negligent is that appellant created a reasonably foreseeable risk of such third party conduct.

*Greenville Memorial Auditorium,* 301 S.C. at 246–47, 391 S.E.2d at 548–49.

Subsection (25) of § 15–78–60 subsumes subsections (4), (5), (9), and (20). These subsections must be read in light of subsection (25). If a defendant is grossly negligent under

§ 15–78–60(25), it cannot claim immunity under any of § 15–78–60's other subsections because "the exception to the normal rule of immunity applies." *Jackson,* 301 S.C. at 128, 390 S.E.2d at 469. Therefore, because genuine issues of material fact exist as to whether the School District was grossly negligent in the exercise of its duties, including but not limited to the supervision, protection and control of the students in its custody, this action is not barred by subsections (4), (5), (9), or (20) of § 15–78–60.

## CONCLUSION

Viewing the evidence in the light most favorable to Etheredge, we hold there was sufficient evidence to create a jury question as to whether the School District acted in a grossly negligent manner. We cannot conclude as a matter of law the School District did not act in a grossly negligent manner. Concomitantly, the trial court erred in granting summary judgment on the ground the School District was immune from liability pursuant to subsections (4), (5), (9), (20) and (25) of § 15–78–60. Accordingly, the order of the trial court granting summary judgment to the School District is reversed and the case is remanded for trial.

**REVERSED and REMANDED.**

HUFF, J., concurs.

HOWELL, C.J., concurs in result in a separate opinion.

HOWELL, Chief Judge, concurring in result:

I agree with the majority's conclusion that the trial court erred in granting summary judgment to the School District. I write separately, however, because I reach that conclusion through a different analysis than that of the majority.

In my view, the majority places undue emphasis on the affidavit of Harland Brown, the campus security monitor. In his affidavit, Brown points to what he believes to be numerous deficiencies in the District's approach to maintaining security on campus, including the District's failure to supply him with a uniform, gun, or night stick, and the District's failure to properly train him. Accepting these allegations to be true, as we must when determining whether summary judgment was

properly granted, I do not believe Brown's affidavit creates any genuine issues of fact as to the District's liability under the Tort Claims Act.

As the majority correctly notes, the District may be held liable only if it exercised its duty to supervise its students in a grossly negligent manner. "Gross negligence is the intentional, conscious failure to do something which it is incumbent upon one to do or the doing of a thing intentionally that one ought not to do. Negligence is the failure to exercise due care, while gross negligence is the failure to exercise slight care." *Clyburn v. Sumter County Sch. Dist. No. 17,* 317 S.C. 50, 53, 451 S.E.2d 885, 887 (1994) (citation omitted).

It is undisputed that the District took some steps to ensure the safety of its students, including employing three assistant principals and two security monitors, all of whom carried walkie-talkies and monitored the hallways to prevent disturbances. Thus, I believe that the District exercised at least slight care with regard to campus security in general. While it may be that the District's security measures could have been more extensive, the fact that the District did not do everything possible does not amount to gross negligence. *See e.g., Clyburn,* 317 S.C. at 53, 451 S.E.2d at 887 (school not grossly negligent where its employees attempted on several occasions to prevent confrontations between student and non-student assailant, even though school's efforts ultimately were inadequate). The security measures actually in place cannot be considered so deficient as to amount to a failure on the part of the District to exercise slight care. Thus, to the extent Etheredge's claim is premised upon the District's failure to provide adequate security at the school, I conclude that the only reasonable inference from the facts is that the District was not grossly negligent.

Moreover, even if the District's security policies were deficient in the areas identified in Brown's affidavit, neither Brown's affidavit nor any other evidence presented by Etheredge in any way links these deficiencies to the tragic incident between Dunlap and his assailants. That is, there is no evidence in the record from which a jury could reasonably conclude that the incident would not have occurred had Brown been trained and outfitted as he desired or had the school's

security measures otherwise been tightened. *See, e.g., Rush v. Blanchard*, 310 S.C. 375, 379, 426 S.E.2d 802, 804 (1993) (Proof of proximate cause "requires proof of both causation in fact and legal cause. Causation in fact is proved by establishing the injury would not have occurred 'but for' the defendant's negligence.") (citation omitted). Thus, even assuming the District's failure to properly establish and implement security measures could be considered gross negligence, there is no evidence in the record from which we could conclude that the gross negligence was the proximate cause of Dunlap's death. *See, e.g., Ellis v. Oliver*, 323 S.C. 121, 125, 473 S.E.2d 793, 795 (1996) ("Negligence is not actionable unless it is a proximate cause of the injury complained of.").

Although I believe Brown's affidavit fails to create any genuine issue of material fact, I nonetheless conclude that there are genuine issues of fact that render summary judgment inappropriate.

In support of its motion for summary judgment, the District presented the affidavit of Ellen Mosely, the Eau Claire principal at the time of the shooting. According to Mosely's affidavit, on January 20, 1993, just over a year before the shooting, Dunlap, the victim of the incident involved in this case, was found with a pistol in his possession on campus. Dunlap was expelled for the remainder of that school year. In its answer, the District admitted that, prior to the fatal shooting, the actions of Dunlap "toward the pupil who shot him created a belief by that pupil that such pupil was in imminent danger of losing his life or sustaining serious bodily injury."

These facts, when viewed in the light most favorable to Etheredge, indicate that the District had notice before the shooting of specific and potentially life-threatening problems between Dunlap and the student who killed him. Given this notice and Dunlap's history of bringing a dangerous weapon to school, a jury could reasonably conclude that the District's failure to intervene and attempt to resolve the problems between Dunlap and his assailant amounted to gross negligence.[1] *Cf. Smart v. Hampton County Sch. Dist. No. 2*, 315

---

1. Rule 56, SCRCP does not require that the genuine issues of fact necessary to avoid summary judgment be created by the submissions of the non-moving party. Instead, Rule 56 simply provides that "[t]he

S.C. 192, 432 S.E.2d 487 (Ct.App.1993) (where teacher knew that student was being bullied by other students between whom the student was seated, teacher's failure to change the seating arrangement to separate the boys could reasonably be considered a failure to exercise slight care), *cert. denied* (December 7, 1993).

Accordingly, based on the particular facts of this case, I agree with the majority's conclusion that summary judgment should not have been granted in this case. I disagree, however, with majority's basis for its conclusion.

judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. Thus, it is irrelevant that it was the materials submitted by the District that created the issues of fact rendering summary judgment inappropriate.