523 S.E.2d 795

**CAROLINA ALLIANCE FOR FAIR EMPLOYMENT
and Rachel Stern, Appellants,**

v.

**SOUTH CAROLINA DEPARTMENT OF LABOR, LICENSING,
AND REGULATION and Adecco Temporary Services, of whom
South Carolina Department of Labor, Licensing and Regulation is, Respondent.**

**No. 3061.**

Court of Appeals of South Carolina.

Submitted Oct. 5, 1999.
Decided Oct. 25, 1999.

478

Stephen John Henry, of Greenville, for appellants.

V. Clark Price, of Love, Thornton, Arnold & Thomason, of Greenville, for respondent.

ANDERSON, Judge:

Carolina Alliance for Fair Employment (CAFE) and Rachel Stern brought this declaratory judgment action against South Carolina Department of Labor, Licensing, and Regulation (the Department) and Adecco Temporary Services (Adecco, f/k/a Adia Temporary Services) (Adecco) seeking an order clarifying whether the notice requirements of S.C.Code Ann § 41–10–30A (Supp.1998)[1] are met by a minimum wage notification. The Circuit Court found a minimum wage notification suffi-

---

1. That statute provides:

> Every employer shall notify each employee in writing at the time of hiring of the normal hours and wages agreed upon, the time and place of payment, and the deductions which will be made from the wages, including payments to insurance programs. The employer has the option of giving written notification by posting the terms conspicuously at or near the place of work. Any changes in these terms must be made in writing at least seven calendar days before they become effective. This section does not apply to wage increases.

S.C.Code Ann. § 41–10–30(A) (Supp.1998).

cient, and therefore, granted the Department's summary judgment motion. CAFE and Stern appeal. We affirm.[2]

## *FACTS/PROCEDURAL BACKGROUND*

CAFE is a statewide group of thirteen chapters consisting of over 1,000 dues paying families. In November 1994, CAFE sponsored a "Temp School." CAFE hired nineteen people for one week to obtain information from them about their experiences with temporary employment. Despite their complaints, none of the participants filed an official grievance.

A "temp testing project" was conducted in the Greenville area in 1995–1996 to further investigate and document temporary agency practices. Individuals, referred to as "testers," were hired by CAFE on a contract basis to register at "targeted temp agencies," go out on assignments, work at least one day, and submit written reports to CAFE. A second "temp testing project" was later conducted state-wide. Stern was one of the testers.

In January 1997, CAFE assisted its "testers" in filing complaints with the Department alleging the temporary agencies failed to provide the written wage notice required by S.C.Code Ann. § 41–10–30(A) (Supp.1998). Stern was registered with Adecco, and agreed to work for $6.00 per hour. She wrote the Department on January 23, 1997:

> I registered at Adia for temporary employment on around November 22, 1996. I received a call from Adia on around November 27 and was assigned to work at Holset. I worked at Holset as assigned on around December 2, 1996 (one day only).
>
> Adia has never provided written notice to me of the specific wages for this assignment, in violation of Section 41–10–30(A). I request an investigation of this complaint, and upon confirmation of a violation, that Adia be issued a warning letter as provided in Section 41–10–80(A).
>
> Please note that I hereby designate Mr. Charles Taylor[3] of the Carolina Alliance for Fair Employment as my represen-

---

2. Because oral argument would not aid the Court in resolving the issues on appeal, we decide this case without oral argument pursuant to Rule 215, SCACR.

3. Charles Taylor is not an attorney licensed in South Carolina.

tative for the purpose of this complaint investigation. Mr. Taylor can be reached at the CAFE office ... Mr. Taylor is familiar with my case, and he can help answer questions and relay messages to me as needed. I also request that Mr. Taylor be provided with access to and copies of all correspondence and other documentation in the course of this complaint investigation.

She followed up with a phone call on February 10, 1997. On February 20, 1997, the Department investigated Adecco. Adecco posted the following notice:

## NORMAL HOURS OF WORK:

To be determined by assignment to client/agencies, and will typically conform to client's normal working hours.

## RATE OF PAY:

Each employee is guaranteed a minimum of $4.25 per hour. Some assignments will pay higher rates. For each assignment you accept, your pay rate will be explained.

This verbiage is virtually identical to that suggested by the Department for temporary agencies. The Department found that Adecco had complied with the statute. Accordingly, it did not issue Adecco a warning letter.

Thereafter, Charles Taylor, CAFE's executive director, had a "series of communications" with the Department concerning the interpretation that the minimum wage poster satisfied the wage notification requirement. This suit requested:

[A] declaration of the meaning of Section 41–10–30(a)'s notice provisions, in particular whether or not this section applies to Adecco and similarly situated temporary employment services agencies (sic), whether the notification required to be provided under that statute is met by a general minimum wage notification or if more is required. The Plaintiff Stern submits that her rights as a temporary employee have been impacted by Defendant Adecco's failure to provide the notice required by law as well as by the Department's incorrect statutory interpretation. Additionally, both Plaintiffs assert that the rights of other temporary employees throughout South Carolina who seek protection

through Section 41–10–30(A) of the South Carolina Code of Laws are potentially impacted by this action.[4]

Adecco answered admitting Stern was an employee.[5] Adecco later filed a motion to dismiss. The Trial Court denied that motion finding a justiciable controversy between Adecco and Stern. A portion of that order addressed the standing of CAFE and Stern to bring this action. The Trial Court explained:

> Defendants argue, however, that because CAFE does not allege an employer/employee relationship with [Adia], CAFE is not entitled to notice, and thus it has no rights to assert; therefore, the Court should dismiss CAFE from this lawsuit. I disagree. *CAFE's standing is more appropriately an issue for the trial judge.* If the elements of a justiciable controversy are present, then this action will survive the defendant's 12(b)(6) motion. *Even though CAFE may not have standing,* because the plaintiffs have alleged that Stern is an "employee", this Court may determine whether a justiciable controversy exits.

(Emphasis added). At some point, however, Adecco was dismissed from this suit.

The remaining parties filed cross-motions for summary judgment. The Trial Court, granting the Department's motion, stated:

> [I]nterpreting the statute to require notification of the specific hours of employment and rates of pay for each assignment would be impracticable.... If, as Plaintiffs appear to contend, the temporary employment agency is required to state more specifically the wages and hours of each temporary assignment, then it would be, as argued by the Department, practically impossible for a temporary employment agency to comply with the requirements of the statute.... If possible, Courts should construe a statute so as to escape an absurd interpretation and to carry the intention of the legislature into effect.... The Depart-

---

4. There is no indication that CAFE or Stern ever sought certification as a class. *See* Rule 23(a), SCRCP.

5. Chapter 10 does not define employee, but excludes an independent contractor. *See Adamson v. Marianne Fabrics, Inc.,* 301 S.C. 204, 391 S.E.2d 249 (1990).

ment's interpretation of the statute is reasonable and is consistent with the language utilized by the legislature. As argued by the Department, the notice provision requires that the employer give enough information as to wages and hours to a potential employee to put that employee in an educated position to decide whether or not to accept employment. The Adia notice accomplishes this purpose and is consistent with the language of the statute as interpreted by the Department. In light of the record, this Court finds no cogent reason to disagree with the Department in its interpretation of the statute.

The Trial Court did not address either CAFE's or Stern's standing to maintain this suit. Following CAFE and Stern's motion to reconsider, the Trial Court added: "[T]his Court concludes as a matter of law that the minimum wage notification approved by the Department of Labor satisfies § 41–10–30(A)."

## ISSUES

I. Did the trial judge err in granting summary judgment for the Department and finding no genuine issue of material fact existed concerning the appropriate notification required under S.C.Code Ann. § 41–10–30(A)?

II. Did the trial judge err in denying summary judgment for CAFE and Stern?

## STANDARD OF REVIEW

"Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Tupper v. Dorchester County,* 326 S.C. 318, 487 S.E.2d 187 (1997). All ambiguities, conclusions, and inferences arising from the evidence must be construed most strongly against the moving party. *Baugus v. Wessinger,* 303 S.C. 412, 401 S.E.2d 169 (1991). "Summary judgment is proper where plain, palpable, and indisputable facts exist on which reasonable minds cannot differ." *Rothrock v. Copeland,* 305 S.C. 402, 405, 409 S.E.2d 366, 368 (1991). It is not appropriate where further inquiry into the facts of the case is desirable to clarify the application of the law. *Tupper, supra.*

Even when there is no dispute as to evidentiary facts, but only as to the conclusions or inferences to be drawn from them, summary judgment should be denied. *Gilliland v. Elmwood Properties,* 301 S.C. 295, 391 S.E.2d 577 (1990). Because it is a drastic remedy, summary judgment should be cautiously invoked so no person will be improperly deprived of a trial of the disputed factual issues. *Etheredge v. Richland Sch. Dist. I,* 330 S.C. 447, 499 S.E.2d 238 (Ct.App.1998).

The party seeking summary judgment has the initial burden of demonstrating the absence of a genuine issue of material fact. *Baughman v. American Tel. & Tel. Co.,* 306 S.C. 101, 410 S.E.2d 537 (1991). Once the party moving for summary judgment meets this initial burden, the non-moving party cannot simply rest on the mere allegations or denials contained in the pleadings. Rule 56(e), SCRCP. Rather, the non-moving party must come forward with specific facts showing there is a genuine issue for trial. Rule 56(e), SCRCP.

The plain language of Rule 56(c), SCRCP, mandates the entry of summary judgment, after adequate time for discovery against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial. *Baughman, supra.* A complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Id.*

## *LAW/ANALYSIS*

### I. STANDING

"The existence of an actual controversy is essential to jurisdiction to render a declaratory judgment." *South Carolina Electric & Gas Co. v. South Carolina Public Service Authority,* 215 S.C. 193, 215, 54 S.E.2d 777, 787 (1949). While this question has not been raised on appeal, we do so *sua sponte,* because the parties cannot by consent or agreement confer jurisdiction on the court to render a declaratory judgment in the absence of an actual justiciable controversy. *Power v. McNair,* 255 S.C. 150, 177 S.E.2d 551 (1970) (citations omitted).

## A. STERN

"[A] private person may not invoke the judicial power to determine the validity of executive or legislative action unless he has sustained, or is in immediate danger of sustaining, prejudice therefrom." *Baird v. Charleston County,* 333 S.C. 519, 530, 511 S.E.2d 69, 75 (1999) (citing *Blandon v. Coleman,* 285 S.C. 472, 330 S.E.2d 298 (1985) and *Myers v. Patterson,* 315 S.C. 248, 433 S.E.2d 841 (1993)). *See also Florence Morning News v. Building Comm'n,* 265 S.C. 389, 218 S.E.2d 881 (1975). Such imminent prejudice must be of a personal nature to the party laying claim to standing and not merely of general interest common to all members of the public. *Ex Parte Levitt,* 302 U.S. 633, 58 S.Ct. 1, 82 L.Ed. 493 (1937); *Baird, supra; Citizens of Lee County, Inc. v. Lee County,* 308 S.C. 23, 416 S.E.2d 641 (1992); *Energy Research Foundation v. Waddell,* 295 S.C. 100, 102, 367 S.E.2d 419, 420 (1988); *Toussaint v. State Bd. of Medical Examiners,* 285 S.C. 266, 329 S.E.2d 433 (1985); *Florence Morning News, supra.*

In the complaint, Stern avers:

At the time of her hiring, or during her short period of employment with Adecco, Plaintiff Stern was not given written notice of the wages to be paid, the normal hours of work, the time and place of payment or the deductions which would be made from her wages.

. . . .

The Plaintiff Stern submits that her rights as a temporary employee have been impacted by Defendant Adecco's failure to provide the notice required by law as well as by the Department's incorrect statutory interpretation.

However, Stern was guaranteed $4.25 per hour in the posted written notice, but received $6.00 per hour. In other words, she complains she was not informed by Adecco, who is no longer involved in this suit, that she would make more money than she was guaranteed. Stern has failed to demonstrate any injury to her based on the Department's interpretation of the statute, despite her conclusory allegations. Simply put, Stern was not prejudiced, and has not sustained the requisite injury for maintaining this law suit.

## B. CAFE

An organization has standing only if it alleges that it or its members will suffer an individualized injury; a mere interest in a problem is not enough. *Sierra Club v. Morton,* 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). *See also Energy Research Foundation v. Waddell,* 295 S.C. 100, 367 S.E.2d 419 (1988) (finding the organization alleged no individualized injury, and therefore, had no standing). The complaint declares:

> [B]oth Plaintiffs assert that the rights of other temporary employees throughout South Carolina who seek protection through Section 41–10–30(A) of the South Carolina Code of Laws are potentially impacted by this action.

Nowhere does CAFE allege any individualized harm or injury to itself or any of its members. Therefore, it does not have standing to bring this action.

## C. DECLARATORY JUDGMENT

Stern and CAFE seek a declaration of the meaning of S.C.Code Ann. § 41–10–30(A) (Supp.1998). The Declaratory Judgments Act provides:

> Any person ... whose rights, status or other legal relations are affected by a statute ... may have determined any question of construction or validity arising under the ... statute ... and obtain a declaration of rights, status or other legal relations thereunder.

S.C.Code Ann. § 15–53–30 (1977).

"In declaratory judgment actions '[t]he interest of the parties ... to the subject matter of the controversy must be more than merely general. It must be a substantial, direct, and legally protected present interest in the relief sought.'" *Quinn v. City of Columbia,* 303 S.C. 405, 407–08, 401 S.E.2d 165, 167 (1991) (footnote omitted) (citation omitted) (emphasis added).

Stern fails to allege, and fails to demonstrate, how her rights have been impacted by the notice posted by Adecco and the interpretation taken by the Department. CAFE and Stern both maintain they are protecting others who may be

"potentially" impacted. However, this is too hypothetical to warrant declaratory relief.

> Before a court may render a declaratory judgment, an actual, justiciable controversy must exist. A justiciable controversy is a real and substantial controversy which is ripe and appropriate for judicial determination, as distinguished from a contingent, hypothetical or abstract dispute. *Orr v. Clyburn,* [277 S.C. 536], 290 S.E.2d 804 (1982).

*Pee Dee Elec. Co-op., Inc. v. Carolina Power and Light Co.,* 279 S.C. 64, 66, 301 S.E.2d 761, 762 (1983).

The notice posted by Adecco and the interpretation by the Department did not work an injustice on Stern. The claims by Stern and CAFE on behalf of potentially affected future temporary employees do not give rise to standing for either CAFE or Stern.

### D. PUBLIC IMPORTANCE

 One exception to the requirement a party have standing is if the issue is of such public importance that guidance from this Court will prohibit future litigation.

> However, a court may confer standing upon a party when an issue is of such public importance as to require its resolution for future guidance. *See Thompson v. South Carolina Comm'n on Alcohol and Drug Abuse,* 267 S.C. 463, 229 S.E.2d 718 (1976) (holding that the plaintiffs had standing because the questions involved were of such wide concern, both to law enforcement personnel and to the public); *Berry v. Zahler,* 220 S.C. 86, 66 S.E.2d 459 (1951) (holding that questions of public interest originally encompassed in an action should be decided for future guidance); *Ashmore v. Greater Greenville Sewer Dist.,* 211 S.C. 77, 44 S.E.2d 88 (1947) (same); *cf. Quinn v. City of Columbia,* 303 S.C. 405, 401 S.E.2d 165 (1991) (rejecting the contention that the matter was of such public importance as to confer standing).

*Baird v. Charleston County,* 333 S.C. 519, 531, 511 S.E.2d 69, 75 (1999).

In the economy today, a greater number of businesses are relying on temporary employees. The duties of these employees run the gamut of possibilities. Some are hired for only a

few days to handle purely clerical matters. Others are hired for extended periods in positions with managerial responsibilities. The wages of these employees vary as much as the nature of their assignments. One thing is certain, temporary agencies are proliferating throughout the state and will continue to do so as long as businesses focus on outsourcing and cutting costs. Temporary agencies have numerous applicants and assignments, and to leave them in a constant state of flux or confusion about the wage notification requirements of S.C.Code Ann. § 41–10–30(A) is unnecessary.

We agree to address the merits of Stern's claim to edify the Department as well as temporary agencies statewide.

## II. S.C.CODE ANN. § 41–10–30(A) (SUPP.1998)

 CAFE and Stern profess the Department erroneously interpreted the statute. They assert the exact amount of the employee's wages must be disclosed. We disagree.

 Our primary function in interpreting a statute is to ascertain the intent of the legislature. *Multi–Cinema, Ltd. v. South Carolina Tax Commission,* 292 S.C. 411, 357 S.E.2d 6 (1987). That intent must be gleaned from the language chosen by the legislature. *See Glover by Cauthen v. Suitt Constr. Co.,* 318 S.C. 465, 458 S.E.2d 535 (1995); *Holley v. Mount Vernon Mills, Inc.,* 312 S.C. 320, 440 S.E.2d 373 (1994); *Kiriakides v. United Artists Communications, Inc.,* 312 S.C. 271, 440 S.E.2d 364 (1994); *Utilities Constr. Co. v. Wilson,* 321 S.C. 244, 468 S.E.2d 1 (Ct.App.1996); *Dumas v. InfoSafe Corp.,* 320 S.C. 188, 463 S.E.2d 641 (Ct.App.1995).

 "Words used in a statute should be taken in their ordinary and popular significance unless there is something in the statute requiring a different interpretation." *Santee Cooper Resort v. S.C. Public Serv. Comm.,* 298 S.C. 179, 184, 379 S.E.2d 119, 122 (1989) (citing *Hatchett v. Nationwide Mutual Insurance Co.,* 244 S.C. 425, 137 S.E.2d 608 (1964)). Where the legislature elects not to define the term in the statute, the court will interpret the term in accord with its usual and customary meaning. *Ex Parte Adoptive Parents v. Biological Parents,* 315 S.C. 535, 446 S.E.2d 404 (1994). The court must then apply that term according to its literal meaning. *Paschal v. State Election Comm'n, supra; Carolina Power & Light*

*Co. v. City of Bennettsville,* 314 S.C. 137, 442 S.E.2d 177 (1994); *Holley v. Mount Vernon Mills, Inc.,* 312 S.C. 320, 440 S.E.2d 373 (1994). The court may not resort to subtle or forced construction to limit or expand a statute's operation. *Rowe v. Hyatt,* 321 S.C. 366, 468 S.E.2d 649 (1996); *Paschal v. State Election Comm'n,* 317 S.C. 434, 454 S.E.2d 890 (1995); *Anderson v. State Farm Mut. Auto. Ins. Co.,* 314 S.C. 140, 442 S.E.2d 179 (1994). Finally, a statute must receive a practical, reasonable, and fair interpretation consonant with the purpose, design, and policy of the lawmakers. *Caughman v. Columbia Y.M.C.A.,* 212 S.C. 337, 47 S.E.2d 788 (1948).

Moreover, construction of a statute by an agency charged with its administration will be accorded the most respectful consideration and will not be overruled absent compelling reasons. *Glover by Cauthen v. Suitt Constr. Co.,* 318 S.C. 465, 458 S.E.2d 535 (1995); *Home Health Serv., Inc. v. South Carolina Tax Comm'n,* 312 S.C. 324, 440 S.E.2d 375 (1994); *Laurens County Sch. Dists. 55 and 56 v. Cox,* 308 S.C. 171, 417 S.E.2d 560 (1992); *Jasper County Tax Assessor v. Westvaco Corp.,* 305 S.C. 346, 409 S.E.2d 333 (1991); *Stephen v. Avins Const. Co.,* 324 S.C. 334, 478 S.E.2d 74 (Ct.App.1996). The verbiage used by Adecco is virtually identical to that suggested by the Department for temporary agencies.

Further, Sharon Dantzler, Deputy General Counsel for the South Carolina Department, who also helped draft the statute, elucidated:

This Section allows an employer to set any wage terms that he finds appropriate. For example if the employer can find workers who will work eighteen (18) hours a day, six (6) days a week, fifty (50) weeks a year for a peppercorn, the State of South Carolina will not require that he pay them any more than that. This statute does require that the employer put the terms of employment in writing so that the worker knows what the arrangement is at the time he or she is hired. The employer, using the example just given, is obligated to pay the peppercorn at the time and place he has designated.

Based upon this interpretation of the law, the Department allows an employer, including a temporary employment service, to notify its employees at the time of hire that it

may be offering a range of wages and normal hours. When the employee receives that notice, he can choose to work under that arrangement or he can go on to another employer. It is the Department (sic) and my position that this interpretation, as it relates to temporary services, is consistent with the meaning and intent of South Carolina Code Section 41–10–30(A) and complies with that notification requirement.

. . . .

The Department interprets Section 41–10–30(A) so as to permit a temporary employment agency to provide its employee with a range of the wages and normal hours of work the employee can expect at various work sites. I have reviewed the notice of employment provided to Rachel Stern by [Adecco] and I believe that this notice is in compliance with Section 41–10–30(A).

 The statute is a notice statute. It is intended to provide the employee with the information requisite to make an educated decision whether or not to accept employment. The wages, hours, and time and place of payment must be stated. The Department acknowledged the statute does not aim to treat temporary agencies any different than other employers. The Department contends the statute intends notification to the employee and employer of the minimum terms of the employment contract. Dantzler noted:

Particularly in the 1990 debate, the supporters of the legislation made it clear that they expected it to specifically benefit the employees by seeing that the rules could not be changed on them mid-employment, and that the minimum standards that had been promised to them at the beginning would be maintained until the seven days notice was given.

 The Department believes the intent of the statute is met if a temporary agency, in its notice, advises the employee there will be variations in the terms of employment from assignment to assignment. This can be achieved by providing the employee with the minimum terms or a range of possible terms. We agree.

 CAFE and Stern contend each temporary employee must be given written notice of their specific pay for each assignment. We disagree.

The interpretation proposed by CAFE and Stern's would be impractical, unreasonable, and reach an absurd result. Requiring the agency to provide notice for each individual assignment, in which wages and hours may differ, could lead to the rules being changed mid-stream. If the agency has agreed to a minimum amount or number of hours for one assignment, and that is the basis of the temporary employee agreeing to work for the specific agency, there is nothing to prevent the agency from providing a different wage or number of hours in the second assignment. Thus, the intent of the statute would be defeated.

CAFE and Stern's interpretation would work a disservice upon the temporary employee, and eliminate many of the assignments temporary employees are intended to fill. The trial judge's order illuminated: ·

> Furthermore, the notification provision requires that any changes in the terms of employment must be made in writing at least seven (7) calendar days before they become effective. If a temporary employment agency were required to state more specifically the wages and hours of each temporary assignment, then it would be, practically impossible for a temporary employment agency to comply with the requirements of the statute. For example: If a temporary employee received a two day assignment on Monday and another assignment became available on Thursday, the temporary employment agency could not comply with the statute and would be unable to offer the temporary employee the position.

Indubitably, depriving the temporary employee of a possible position is not what was intended by the general assembly in passing this notification statute.

### CONCLUSION

While we find neither Stern nor CAFE have standing to bring this action, we have addressed the merits due to their public importance. We believe it necessary to eliminate the confusion surrounding S.C.Code Ann. § 41–10–30(A) (Supp. 1998) and provide future guidance to the Department and temporary agencies. We rule the posting recommended by the Department for use in temporary agencies, and the one

utilized by Adecco, satisfy the requirements of the statute as a matter of law.[6] The trial judge's grant of summary judgment for the Department is

**AFFIRMED.**

GOOLSBY and CONNOR, JJ., concur.

---

6. We decline to separately address the issue of the trial judge's denial of CAFE and Stern's summary judgment motion. Their complaint is the Trial Court failed to adopt their interpretation of the statute, and this issue has been answered.