Ann SHAHZADE, Plaintiff

v.

George GREGORY, Defendant.

No. 92–12139–EFH.

United States District Court,
D. Massachusetts.

May 8, 1996.

Beth S. Herr, Lill & Herr, P.C., Cambridge, MA, Paul E. Mitchell, Mitchell, Heinlein & DeSimone, Boston, MA, for Plaintiff.

Walter H. McLaughlin, Jr., William F. York, Boston, MA, for Defendant.

## MEMORANDUM AND ORDER

HARRINGTON, District Judge.

This matter is before the Court on the Defendant's Motion in Limine to Exclude Repressed Memory Evidence. The defendant in this case is Dr. George Gregory, the plaintiff is Ann Shahzade, the defendant's cousin. For the reasons set forth below, the Court hereby denies the defendant's motion.

The plaintiff in this case alleges repeated episodes of non-consensual sexual touching of her by the defendant from 1940 to 1945, more than forty-seven years prior to her filing a complaint. The plaintiff was between the ages of approximately twelve and seventeen at this time; the defendant is approximately five years her senior. The plaintiff claims that these episodes had been completely blocked out and that she had no memory of them until she recovered so-called "repressed memories" of these touchings during psychotherapy in November of 1990. The defendant admits to some degree of sexual activity between himself and the plaintiff, but there is a dispute with regard to the nature and extent of such activity. The plaintiff now wants to introduce evidence relating to these alleged repressed memories.

■ When a proffered scientific theory is beyond the general understanding of a jury, in order to introduce evidence relating to this theory, an individual must rely on expert testimony as to the validity of the theory. *See United States v. Montas*, 41 F.3d 775, 783 (1st Cir.1994). The proposed expert must qualify as an expert and must offer testimony relating to reliable scientific knowledge. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591, 113 S.Ct. 2786, 2796, 125 L.Ed.2d 469 (1993). The Court acknowledges the appropriateness of an expert in this type of case and concludes that the plaintiff's expert, Dr. Bessel van der Kolk, is not only qualified as an expert in the field of memory, but that he is one of the country's most renowned psychiatrists in this specialty.[1] For the following reasons, the Court finds the subject matter, repressed memory syndrome, to be reliable and therefore admissible.

■ Under Rule 702 of the Federal Rules of Evidence, in order for evidence to be admissible, the trial court must conclude that "any and all scientific testimony ... is not only relevant, but reliable." *Daubert*, at 589, 113 S.Ct. at 2795. The reliability standard is grounded in Rule 702's requirement that an expert's testimony relate to "scientific knowledge." *Daubert*, at 580, 113 S.Ct. at 2790. To qualify as "scientific," the theory must be grounded in the methods and procedures of science. *Daubert*, at 589, 113 S.Ct. at 2795. To qualify as "knowledge," the testimony must be more than subjective belief or unsupported speculation. *Daubert*, at 589, 113 S.Ct. at 2795. In addition, "in order to qualify as 'scientific knowledge,' an inference or assertion must be derived by the scientific method." *Daubert*, at 590, 113 S.Ct. at 2795. In cases dealing with scientific evidence, reliability is based upon scientific validity. *Daubert*, at 590–91, n. 9, 113 S.Ct. at 2795, n. 9. The Supreme Court in *Daubert* set forth several criteria which should be considered when determining "whether the reasoning or methodology underlying the testimony is scientifically valid...." *Daubert*, at 593, 113 S.Ct. at 2796. The factors to be considered when deciding if proffered testimony is valid "scientific knowledge," and therefore reliable, are: (1) whether the theory has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the theory's known or potential rate of error; and (4) whether the theory has attained general acceptance within the relevant scientific community. *Daubert*, at 592–93, 113 S.Ct. at 2796–97. After considering these factors, this Court finds that the reliability of the phenomenon of repressed memory has been established, and therefore, will permit the

---

1. Dr. van der Kolk is currently an Associate Professor of Psychiatry at Harvard Medical School and the Chief of the Trauma Clinic at Massachusetts General Hospital. He has gained international recognition in the field of trauma and memory and is on the Board of Directors for the International Society for Traumatic Stress Studies. Dr. van der Kolk has published many articles on the topic and he is currently writing his fourth book, *Memory, Trauma and the Integration of Experience*.

plaintiff to introduce evidence which relates to the plaintiff's recovered memories.

■ In a case raising the same issue, *Isely v. Capuchin Province*, 877 F.Supp. 1055 (E.D.Mich.1995), the court stated that in order to introduce repressed memory evidence, a witness must "testify as to whether that theory can be, or has been, tested or corroborated and, if so, by whom and under what circumstances; whether the theory has been proven out or not proven out under clinical tests or some other accepted procedure for bearing it out; and whether the theory has been subjected to other types of peer review.... Obviously this part of this foundational element will include testimony as to whether or not the theory of repressed memory is widely accepted in the field of psychology." *Isely*, 877 F.Supp. at 1064.

Dr. van der Kolk's testimony sufficiently satisfies these foundational factors. Dr. van der Kolk discussed in detail several studies which focused on the concept of repressed memories and ultimately, through their findings, serve to validate the theory.[2] One such study, which Dr. van der Kolk referred to as the Herman and Schatzow study, looked at victims of sexual abuse and found that only approximately one-third of the victims remembered all of the details of the abuse. Another one-third of the victims had a partial memory of the abuse, while the final one-third remembered nothing relating to the abuse. Dr. van der Kolk stated that these figures represent "the sort of figures that every study comes in, regardless of what the methodology is ..." (Tr. 45–46; April 9, 1996).

A study conducted by Linda Myer Williams, which Dr. van der Kolk referred to as "the best study on all this," (Tr. 52; April 9, 1996) further validates the theory of repressed memories. As a graduate student in psychology at the University of Pennsylvania from 1973 to 1975, Ms. Williams did her doctoral dissertation on sexually abused children who had been treated at the Philadelphia Children's Hospital. She conducted extensive interviews with young women who had been sexually abused, and her dissertation detailed the experiences which they had undergone. Seventeen years later, as a research psychologist, Ms. Williams reinterviewed patients who had been the subject of her dissertation to see what impact the earlier sexual abuse had on their later life. She was able to locate about half of her original subjects, and after reinterviewing them, she found that thirty-eight percent of her patients no longer remembered the abuse.

Dr. van der Kolk further testified that the majority of *clinical* psychiatrists recognize the theory of repressed memories and do not find the *theory* itself controversial. He further stated that this is not "a new craze among American *psychiatrists* ... this is a very old issue in psychiatry." (Tr. 32; April 9, 1996). The issue only became controversial when studies on the issue of repressed memories of *sexual abuse*, as opposed to repressed memories of natural traumatic events or wartime incidents, began to surface. People then began to say, "You're full of nonsense. This doesn't happen." (Tr. 42; April 9, 1996). In brief, Dr. van der Kolk testified that repressed memories is not a scientific controversy, but merely a political and forensic one.

Dr. van der Kolk stated that currently the major detractors of the theory are so-called outsiders, "psychologists who do not treat traumatized patients." (Tr. 24; April 9, 1996). Although the defendant's expert, Dr. Bodkin, was a clinical psychiatrist, he does not specialize in the field of memory. Nor do his credentials and expertise in the area of memory compare with those of Dr. van der Kolk. Furthermore, Dr. Bodkin did not claim that the theory of repressed memory was invalid, he merely stated that, in his opinion, the 52 studies relating to repressed memories which he critiqued contained methodological deficiencies and therefore could not serve to validate the theory.

According to the expert who testified in *Isely*, the only controversy among the majority of *clinical* psychiatrists with respect to the issue of repressed memory "is specifically in the area of elicitation of repressed memo-

---

**2.** See Plaintiff's Exhibit 3, Trauma and Memory, for a detailed analysis of several experimental studies done on memory performance in traumatized and nontraumatized populations.

ries, not with the concept itself." *Isely,* 877 F.Supp. at 1065–66. Dr. van der Kolk expanded on this point in recognizing that some memories may not be accurate. "I think there has always been controversies about whether people can trust a patient still. And, particularly, people have always been concerned whether when people tell them something that happened maybe a long time ago that suddenly comes up, whether you can really believe what people, what people tell you." (Tr. 16; April 10, 1996). "Translating [a] sensation into a story is still subject to ordinary human distortions that we all are capable of ... So at the end, just like every other story you hear, you take your subjective self and eventually you decide what you believe—whether you believe what people tell you is true or not, it's how we all make up our minds. So at the end, there really is no scientific proof whether something is true or not unless there is independent corroboration, unless there was somebody there taking a movie." [3] (Tr. 69–70; April 9, 1996). The testimony of the defendant's second expert, Dr. Ofshe, supported this point. The elicitation and accuracy of the recovered memory itself, however, is not the issue currently before the Court. The Court must decide if the *theory* itself is valid. Dr. Ofshe's testimony did not directly address this issue. It must be also noted that Dr. Ofshe is not a clinical psychiatrist, but rather a doctor of Social Psychology.

The American Psychiatric Association, which is the major professional association for psychiatrists in America, recognizes the theory of repressed memories and believes it to be very common among people who have experienced severe trauma. In an official statement by the American Psychiatric Association relating to memories of sexual abuse, the Association stated that "Children and adolescents who have been abused cope with trauma by using a variety of coping mechanisms. In some instances these coping mechanisms result in a lack of conscious awareness of the abuse for varying periods of time. Conscious thoughts and feelings stemming from the abuse may emerge at a later date." (See Plaintiff's Exhibit 2, Statement on Memories of Sexual Abuse).

Diagnostic and Statistical Manual of Mental Disorders (DSM–IV, 1994), which is a widely used manual by psychiatrists to define mental diagnostic categories and is published by the American Psychiatric Association, also recognizes the concept of repressed memories. The term "Dissociative Amnesia," however, is the true technical psychiatric or medical term for the theory and is the term used when defining the condition in the manual. Repressed memories is the popular term. The two terms were used interchangeably in the hearing. The manual states that "Dissociative Amnesia is characterized by an inability to recall important personal information, usually of a traumatic or stressful nature, that is too extensive to be explained by ordinary forgetfulness." (DSM–IV at 477). "Dissociative Amnesia can be distinguished from normal gaps in memory by the intermittent and involuntary nature of the inability to recall and by the presence of significant distress or impairment." (DSM–IV at 481). The manual goes on to state that "Dissociative Amnesia most commonly presents as a retrospectively reported gap or series of gaps in recall for aspects of the individual's life history. These gaps are usually related to traumatic or extremely stressful events." (DSM–IV at 478). Particularly relevant to the issue presently before the Court, the manual recognizes that "In recent years in the United States, there has been an increase in reported cases of Dissociative Amnesia that involves previously forgotten early childhood traumas." (DSM–IV at 479). The manual lists criteria used in diagnosing Dissociative Amnesia: (1) one or more episodes of memory loss relating to a traumatic personal experience which is too extensive to be ordinary forgetfulness; (2) The disturbance does not happen exclusively while the person is suffering from a psychiatric disorder or other general medical condition; (3) The symptoms cause significant distress in important areas of functioning. (DSM–IV at 481). The fact that Dissociative Amnesia is included and discussed in such depth within the DSM–IV is significant, and, speaking as a

---

**3.** The defendant admits to some degree of sexual activity between himself and the plaintiff.

member of the American Psychiatric Association, Dr. van der Kolk said that listing Dissociative Amnesia in DSM–IV "means that at this point in time we recognize that that [Dissociative Amnesia] exists." (Tr. 37; April 9, 1996).

Based on the evidence and testimony of Dr. van der Kolk, the Court finds that the plaintiff has satisfied the four foundational factors which are to be considered, although not independently determinative, in order to introduce evidence relating to repressed memories. The plaintiff has presented sufficient evidence through both Dr. van der Kolk's testimony and various submissions to the Court that (1) the theory has been the subject of various tests; (2) the theory has been subjected to peer review and publication; (3) that repressed memory, as is true with ordinary memories, "cannot be tested empirically," and may not always be accurate, however, the *theory* itself has been established to be valid through various studies. *Isely,* 877 F.Supp. at 1065; and (4) the theory has attained general acceptance within the relevant scientific community, namely, that of clinical psychiatrists.

It is important to stress that, in considering the admissibility of repressed memory evidence, it is not the role of the Court to rule on the credibility of this individual plaintiff's memories, but rather on the validity of the theory itself. For the foregoing reasons, the Court hereby denies the Defendant's Motion in Limine to Exclude Repressed Memory Evidence. For the law to reject a diagnostic category generally accepted by those who practice the art and science of psychiatry would be folly. Rules of law are not petrified in the past but flow with the current of expanding knowledge.

**SO ORDERED.**