511 S.E.2d 699

**Amy Ferrell MORIARTY, Appellant,**

v.

**GARDEN SANCTUARY CHURCH OF GOD, Respondent.**

**No. 2928.**

Court of Appeals of South Carolina.

Heard Nov. 6, 1998.
Decided Jan. 18, 1999.
Rehearing Denied March 27, 1999.

152

Gregg Meyers, of Pratt–Thomas, Pearce, Epting & Walker, of Charleston, for Appellant.

David Betts, of Columbia; and Frank A. Hirsch, Jr., of Charlotte, for Respondent.

ANDERSON, Judge:

Amy Ferrell Moriarty brought this action to recover damages for mental and emotional injuries she allegedly sustained as a result of being sexually abused as a child while attending Kiddie Kollege Day Care Center, a child care facility operated by the Garden Sanctuary Church of God (the Church). In her complaint, Moriarty claimed she was so ill-equipped as a child to cope with the sexual abuse she repressed all memory of the events. The Church pled the statute of limitations as a defense. The trial court granted the Church's motion for summary judgment holding the action was time barred pursuant to S.C.Code Ann. § 15–3–40 (1977)[1] and *Doe v. R.D.*, 308 S.C. 139, 417 S.E.2d 541 (1992). We reverse.

---

1. As codified at the time relevant to the facts of this case, S.C.Code Ann. § 15–3–40 (1977) provided, in part, "[i]f a person entitled to bring an action mentioned in Article 5 of this chapter ... be at the time the cause of action accrued ... [w]ithin the age of twenty-one years ... [t]he time of such disability is not a part of the time limited for the commencement of the action, except that the period within which the action must be brought cannot be extended ... [i]n any case longer than one year after the disability ceases."

## FACTS/PROCEDURAL BACKGROUND

Amy Moriarty was born on August 26, 1971. From August of 1973 to May of 1976, she attended Kiddie Kollege, a day care center sponsored by the Cedar Street Church of God.[2] According to her mother, Moriarty was a very bright, articulate child. However, during the period she attended Kiddie Kollege, her demeanor changed. She became stubborn and unhappy; experienced night terrors; and grew apprehensive about attending day care. Moriarty's mother took her to the pediatrician in response to her night terrors. The doctor, who was unaware of anything unusual happening at Kiddie Kollege, advised Moriarty's mother not to be concerned about the episodes. In May of 1976, Moriarty left Kiddie Kollege.

Growing up, Moriarty continued to have "emotional disturbances and a generalized concern about sleep." Her self concept was low. Moriarty's teachers advised her mother that Moriarty did not work up to her potential. During this time, Moriarty was treated at York County Mental Health Department and an organization called Keystone. She graduated from high school in 1989.

In 1992, Moriarty reported to her mother she had begun to obsessively count numbers in her head. She could not stop the counting and did not understand what compelled her to count. She asked her mother to schedule an appointment for her with a mental health counselor. Moriarty's mother arranged for her to see Lynn Bryan at Carmel Counseling.

Around this time, Moriarty became depressed. She missed classes at York Technical School, where she was a student of the nursing program. She slept excessively and was combative with her fiancé. Bryan referred Moriarty to Dr. James Jewell, who prescribed Prozac for Moriarty's depression and obsessive thoughts. Moriarty attended counseling regularly.

After reading a nursing textbook (as part of her academic studies) and a popular magazine which mentioned masturbation, Moriarty became obsessed with masturbation concluding it was abnormal. She began to see pictures in her mind of a little girl's hand masturbating a male. In late November

---

2. Garden Sanctuary Church of God is the successor in interest to the Cedar Street Church of God.

1992, Moriarty recognized the hand as her own. She recollected the particular dress she was wearing during an episode of abuse. Moriarty and her mother saw, in old family films which had not been viewed for a number of years, a yellow dress matching the description given by Moriarty.

Additionally, Moriarty recalled particular physical characteristics of the abuser: crooked teeth, bushy eyebrows, and frizzy hair. Moriarty visited each of the locations where she had attended day care and felt a "strong reaction" to Kiddie Kollege. One night Moriarty called her mother to ask if the preacher at Kiddie Kollege had bushy eyebrows and frizzy hair. Upon review of a series of photographs, she had a "strong reaction" to a picture of one individual who had bushy eyebrows and frizzy hair.

Moriarty recalled her abuser used a particular name to refer to his penis. She further remembered her abuser warning her if she told about the abuse she would be "overtaken by the devil."

According to the affidavit of Moriarty's mother, Janet Ferrell, Moriarty filed this action within three years of when she had reason to believe she had been the victim of sexual abuse. Ferrell further averred:

> The sexual abuse affected [Moriarty] as a child, when the origin was unknown, but she was also affected as an adult, and it was her adult manifestations which prompted the work to discover even generally the origin of her discomfort. Many of the manifestations for which I have been asked to arrange mental health treatment of my daughter, and all of the adult problems associated with these incidents, became manifested only in 1992 and 1993.

Moriarty commenced this action in November of 1995. In her complaint, she alleged causes of action for negligent infliction of severe emotional distress, invasion of privacy, negligent supervision, and breach of warranty. Moriarty claimed the abuser removed her from supervised rest periods to perform the abusive acts.

In its answer, the Church alleged all causes of action were barred because they were brought more than six years after they accrued and more than one year after Moriarty reached her twenty-first birthday. The Church filed a motion for

summary judgment arguing Moriarty's causes of action accrued, if at all, not later than May of 1976 when she was approximately four and one half years old. Therefore, the Church maintained, her action had to be commenced within one year of her twenty-first birthday or not later than August 26, 1993.

The trial court granted summary judgment to the Church pursuant to S.C.Code Ann. § 15–3–40 and *Doe v. R.D.*, 308 S.C. 139, 417 S.E.2d 541 (1992). The court ruled Moriarty was required to bring this action within one year of her twenty-first birthday. Because she commenced this action more than one year after her twenty-first birthday, the court found the suit was time barred.

The focus of this appeal is two-pronged. The first prong involves the issue of whether the repressed memory syndrome (Dissociative Amnesia) is a viable theory in South Carolina. The second prong concerns the application of the discovery rule to the statute of limitations in repressed memory cases.

## *STANDARD OF REVIEW*

Summary judgment is appropriate when it is clear there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Etheredge v. Richland Sch. Dist. 1*, 330 S.C. 447, 499 S.E.2d 238 (Ct.App.1998); Rule 56(c), SCRCP. In determining whether any triable issue of fact exists, as will preclude summary judgment, the evidence and all inferences which can be reasonably drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Etheredge, supra; Pye v. Aycock*, 325 S.C. 426, 480 S.E.2d 455 (Ct.App.1997). If triable issues exist, those issues must go to the jury. *Rothrock v. Copeland*, 305 S.C. 402, 409 S.E.2d 366 (1991); *Etheredge, supra*.

Summary judgment is not appropriate where further inquiry into the facts of the case is desirable to clarify the application of the law. *Tupper v. Dorchester County*, 326 S.C. 318, 487 S.E.2d 187 (1997). Even when there is no dispute as to evidentiary facts, but only as to the conclusions or inferences to be drawn from them, summary judgment should be denied. *Staubes v. City of Folly Beach*, 331 S.C. 192, 500 S.E.2d 160 (Ct.App.1998). However, when plain, palpable, and indisputa-

ble facts exist on which reasonable minds cannot differ, summary judgment should be granted. *Id.;* *Pye, supra.* All ambiguities, conclusions, and inferences arising from the evidence must be construed most strongly against the movant. *Staubes, supra.*

The party seeking summary judgment has the burden of clearly establishing the absence of a genuine issue of material fact. *Etheredge, supra.* For summary judgment to be granted, it must be perfectly clear no issue of fact is involved. *Id.* Because it is a drastic remedy, summary judgment should be cautiously invoked so no person will be improperly deprived of a trial of the disputed factual issues. *Id.*

## ISSUES

I. Does South Carolina recognize repressed memory of childhood sexual abuse?

II. Is the discovery rule applicable to repressed memory of childhood sexual abuse?

## LAW/ANALYSIS

### I. REPRESSED MEMORY SYNDROME

■ To cope with the horror of their experiences, many child sexual abuse victims develop dissociative defense mechanisms similar to those observed in combat veterans and victims of other atrocities. Dissociation can take a number of forms, including traumatic amnesia—more commonly known as repressed memory. Joy Lazo, Comment, *True or False: Expert Testimony on Repressed Memory,* 28 Loy.L.A.L.Rev. 1345 (1995). Childhood sexual abuse is extremely traumatic for the child victim and is therefore especially conducive to the repression of memory. E.A. Foster, Comment, *Repressed Memory Syndrome: Preventing Invalid Sexual Abuse Cases in Illinois,* 21 S.Ill.U.L.J. 169 (1996).

The study of the repressed memory phenomenon dates back to the turn of the century when Sigmund Freud first developed the theory in the 1890's. Rosemarie Ferrante, Note, *The Discovery Rule: Allowing Adult Survivors of Childhood Sexual Abuse the Opportunity for Redress,* 61 Brook.L.Rev. 199 (1995). Freud theorized the conscious mind can push away, or

repress, anxiety-provoking ideas. Christina J. D'Appolonia, Note, *Nuccio v. Nuccio: The Doctrine of Equitable Estoppel Will Not Bar the Statute of Limitations Defense in a Child Sexual Abuse Case Involving Repressed Memory*, 49 Me. L.Rev. 235 (1997). According to Freud, potent memories, when submerged, can cause both physical and mental symptoms. *Id.* Similarly, studies and observations by philosopher and psychologist William James in 1891 indicated strong emotions (whether positive or negative) produce strong memories, less subject to distortion and decay than normal memory. Mark Pendergrast, *Victims of Memory: Incest Accusations and Shattered Lives* (2d ed. 1996). Most clinicians accept Freud's theory of repression. Ferrante, *supra.*

The premise of repressed memory is that an event occurs which is so traumatic that, in a desperate effort to cope, one's mind dissociates itself and shuts the memory out. Rola J. Yamini, Note, *Repressed and Recovered Memories of Child Sexual Abuse: The Accused as "Direct Victim,"* 47 Hastings L.J. 551 (1996). This is accomplished in a manner which leaves the victim completely unaware of the abuse, only to have those memories resurface perhaps years later. Joseph A. Spadaro, Comment, *An Elusive Search for the Truth: The Admissibility of Repressed and Recovered Memories in Light of Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 30 Conn. L.Rev. 1147 (1998). When an event has been dissociated, a person represses it not because she does not want to remember it, but because she cannot remember it. Susan J. Hall, *Adult Repression of Childhood Sexual Assault: From Psychology to the Media and into the Courtroom*, 22 N.C.Cent. L.J. 31 (1996). They are unable to bring it to their conscious mind at will. *Id.*

It is important to distinguish a critical component of the repressed memory theory. Spadaro, *supra.* This critical element is that the surrounding circumstances and the traumatic incident itself are not simply forgotten. *Id.* Repression of memory is more than "ordinary forgetting," which is the act of simply not thinking about an experience or event for some period of time and then having the memory come back to mind. Cynthia V. McAlister, Comment, *The Repressed Memory Phenomenon: Are Recovered Memories Scientifically Valid Evidence Under Daubert?*, 22 N.C.Cent.L.J. 56 (1996).

Rather, when a memory is repressed, the circumstances and the specific incidents are instead not accessible to the conscious mind of the victim. Spadaro, *supra*. The memories are buried into the victim's subconscious, only to be dug up at a later time by some subsequent stimulus. *Id.*

When a person experiences a traumatic event and is then unable to function normally in life because the memories are too overwhelming, he or she may repress the memory in order to cope. Gary M. Ernsdorff & Elizabeth F. Loftus, *Let Sleeping Memories Lie? Words of Caution About Tolling the Statute of Limitations in Cases of Memory Repression*, 84 J.Crim.L. & Criminology 129 (1993). Theoretically, repression tends to help victims deal with the trauma during the period of the abusive behavior. Christina J. D'Appolonia, Note, *Nuccio v. Nuccio: The Doctrine of Equitable Estoppel Will Not Bar the Statute of Limitations Defense in a Child Sexual Abuse Case Involving Repressed Memory*, 49 Me. L.Rev. 235 (1997). A person who experiences a particularly traumatic event may find it difficult or impossible to function normally while simultaneously maintaining memories of the event. *Id.* The memories are simply too overwhelming. *Id.* In other words, the victim keeps a secret, even from herself. *Id.*

Repression of memories is often a coping mechanism for children who are sexually abused. McAlister, *supra*. Feelings of confusion and helplessness resulting from the inability to stop the abuse or to seek outside assistance lead many victims to internalize the pain, fear, confusion, and guilt. *Id.* This internalization then leads to a denial of the events and a repression of memories of the abuse incidents. Ernsdorff, *supra*. Repression of traumatic memories keeps painful or unacceptable ideas, impulses, and feelings out of conscious awareness and enables the victim to survive by controlling thoughts and feelings to the point at which there is no recognition of victimization. Joy Lazo, Comment, *True or False: Expert Testimony on Repressed Memory*, 28 Loy. L.A.L.Rev. 1345 (1995). Once the memories are subconsciously stored, the person may lead a normal life without the constant disruption of the traumatic event. E.A. Foster, Comment, *Repressed Memory Syndrome: Preventing Invalid Sexual Abuse Cases in Illinois*, 21 S.Ill.U.L.J. 169 (1996).

Years later, however, the repression coping mechanism may backfire on the victim. *Id.* Psychiatrists and clinical psychologists believe repression of traumatic memories may lead to severe depression, substance abuse, low self-esteem, suicidal tendencies, and sexual and social dysfunction. *Id.*

The blocked-off memories do not disappear; instead, they remain subconsciously stored in the mind until signaled by some sort of brain stimulation. Foster, *supra.* When this survival mechanism is no longer needed, generally when the victim is an adult and no longer subject to the abuse, the memories resurface, either gradually or in sudden flashes. Rola J. Yamini, Note, *Repressed and Recovered Memories of Child Sexual Abuse: The Accused as "Direct Victim,"* 47 Hastings L.J. 551 (1996).

The American Psychiatric Association, the major professional association for psychiatrists in America, recognizes the theory of repressed memories and believes it to be very common among people who have experienced severe trauma. *See Shahzade v. Gregory,* 923 F.Supp. 286 (D.Mass.1996). The Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994) (DSM–IV), which is a widely used manual by psychiatrists to define mental diagnostic categories and is published by the American Psychiatric Association, also recognizes the concept of repressed memories. *Id.* The term "Dissociative Amnesia," however, is the true technical, psychiatric, or medical term for the theory and is the term used when defining the condition in the DSM–IV. Repressed memory is the popular term.

The DSM–IV provides:

> The essential feature of Dissociative Amnesia is an inability to recall important personal information, usually of a traumatic or stressful nature, that is too extensive to be explained by normal forgetfulness.... This disorder involves a reversible memory impairment in which memories of personal experience cannot be retrieved in a verbal form (or, if temporarily retrieved, cannot be wholly retained in consciousness)....

> Dissociative Amnesia most commonly presents as a retrospectively reported gap or series of gaps in recall for

aspects of the individual's life history. These gaps are usually related to traumatic or extremely stressful events.

. . . .

... Dissociative Amnesia can be distinguished from normal gaps in memory by the intermittent and involuntary nature of the inability to recall and by the presence of significant distress or impairment.

DSM–IV at 478–81. Particularly relevant to the issue presently before the Court, the manual recognizes that "[i]n recent years in the United States, there has been an increase in reported cases of Dissociative Amnesia that involves previously forgotten early childhood traumas." DSM–IV at 479. The Manual lists criteria used in diagnosing Dissociative Amnesia:

A. The predominant disturbance is one or more episodes of inability to recall important personal information, usually of a traumatic or stressful nature, that is too extensive to be explained by ordinary forgetfulness.

B. The disturbance does not occur exclusively during the course of Dissociative Identity Disorder, Dissociative Fugue, Posttraumatic Stress Disorder, Acute Stress Disorder, or Somatization Disorder and is not due to the direct physiological effects of a substance (e.g., a drug of abuse, a medication) or a neurological or other general medical condition (e.g., Amnestic Disorder Due to Head Trauma).

C. The symptoms cause clinically significant distress or impairment in social, occupational, or other important areas of functioning.

DSM–IV at 481.

Many, if not most, survivors of child sexual abuse develop amnesia that is so complete they simply do not remember they were abused at all. Jocelyn B. Lamm, Note, *Easing Access to the Courts for Incest Victims: Toward an Equitable Application of the Delayed Discovery Rule*, 100 Yale L.J. 2189 (1991). Children abused at an earlier age are more likely to repress than those abused at a later age. E.A. Foster, Comment, *Repressed Memory Syndrome: Preventing Invalid Sexual Abuse Cases in Illinois*, 21 S.III.U.L.J. 169 (1996). Approximately two-thirds of all incest victims report partial or complete memory repression of the sexual abuse. Rola J. Yamini, Note, *Repressed and Recovered Memories of Child Sexual*

*Abuse: The Accused as "Direct Victim,"* 47 Hastings L.J. 551 (1996).

We acknowledge that within the scientific community there is considerable debate among the two schools of thought concerning repressed memory theory. When pared to their essential premises, the two schools may be classified as follows. The proponent school of thought asserts repressed memory theory is a scientifically valid theory and recalled memories are accurate memories. The opposing school of thought contends repressed memory theory is not scientifically valid and memories based upon this theory are neither accurate nor reliable.

We conclude repressed memories of childhood sexual abuse can exist and can be triggered and recovered. *See Shahzade v. Gregory,* 923 F.Supp. 286, 290 (D.Mass.1996) (recognizing scientific validity and reliability of repressed memory phenomenon; "For the law to reject a diagnostic category generally accepted by those who practice the art and science of psychiatry would be folly. Rules of law are not petrified in the past but flow with the current of expanding knowledge."). The fact that Dissociative Amnesia is included and discussed in such depth within the DSM–IV is significant.

We further recognize such memories can be inaccurate, may be implanted, and may be attributable to poorly trained therapists or use of improper therapeutic techniques. *See Doe v. Roe,* 191 Ariz. 313, 955 P.2d 951 (1998). *See also* Sharon A. Campbell, Comment, *Childhood Sexual Abuse, Repressed Memories and Corroborating Evidence: One Burden is Enough: L.C. v. A.K.D.,* 1–SPG Widener L.Symp.J. 465 (1996) (it is virtually undisputed a memory is repressible, but the ability to accurately retrieve a memory, once it has been repressed, is focus of much debate).

It is important to emphasize the present posture of this case: summary judgment. The analysis under the summary judgment law in South Carolina permits this case to continue with viability. Under the rubric of a summary judgment review, the evidence and all inferences which can be reasonably drawn therefrom must be viewed in the light most favorable to Moriarty. Obviously, the trial court will be in a better position to evaluate the efficacy of the repressed memo-

ry syndrome as applied to this case. The Church acknowledged Moriarty and her counselor would testify Moriarty's memory of the alleged incidents had been repressed. The Church admits for purposes of summary judgment the allegation of repressed memory has been made and is a material issue of fact which is in dispute.

## II. STATUTE OF LIMITATIONS/DISCOVERY RULE

■ Generally, a cause of action accrues at the time of the injury. *Holy Loch Distributors, Inc. v. Hitchcock,* 332 S.C. 247, 503 S.E.2d 787 (Ct.App.1998). However, South Carolina has modified this custom by adopting the discovery rule. *Id.* With respect to injuries to the person, the discovery rule, S.C.Code Ann. § 15–3–535 (Supp.1997) provides:

Except as to actions initiated under Section 15–3–545 [actions for medical malpractice], all actions initiated under Section 15–3–530(5) must be commenced within three years after the person knew or by the exercise of reasonable diligence should have known that he had a cause of action.

*See Barr v. City of Rock Hill,* 330 S.C. 640, 500 S.E.2d 157 (Ct.App.1998) (discovery rule provides exception to general rule and tolls statute of limitations until person knows or by exercise of reasonable diligence should know he has cause of action); *Burgess v. American Cancer Soc'y,* 300 S.C. 182, 386 S.E.2d 798 (Ct.App.1989) (statute starts to run upon discovery of such facts as would have led to knowledge thereof if pursued with reasonable diligence). Our Supreme Court has defined reasonable diligence as follows:

"The exercise of reasonable diligence means simply that an injured party must act with some promptness where the facts and circumstances of an injury would put a person of common knowledge and experience on notice that some right of his has been invaded or that some claim against another party might exist. The statute of limitations begins to run from this point and not when advice of counsel is sought or a full-blown theory of recovery is developed."

*Wiggins v. Edwards,* 314 S.C. 126, 128, 442 S.E.2d 169, 170 (1994) (quoting *Snell v. Columbia Gun Exch., Inc.,* 276 S.C. 301, 303, 278 S.E.2d 333, 334 (1981)).

■ Plaintiffs should not suffer where circumstances prevent them from knowing they have been harmed. *Mauldin v. Dyna–Color/Jack Rabbit,* 308 S.C. 18, 416 S.E.2d 639 (1992); *Santee Portland Cement Co. v. Daniel Int'l Corp.,* 299 S.C. 269, 384 S.E.2d 693 (1989), *overruled on other grounds by Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors Div.,* 319 S.C. 556, 462 S.E.2d 858 (1995). In recent years, the trend has been towards recognition and expansion of the discovery rule. *Santee Portland Cement Co., supra.* Application of the discovery rule is an objective determination. *Wiggins, supra.* The focus is upon the date of discovery of the injury, not the date of discovery of the wrongdoer. *Id.*

## A. Application of Discovery Rule to Repressed Memory Cases

■ Survivors [3] who repress their memories of sexual abuse and then recover them many years later—when they are finally able to confront them—are effectively blocked from seeking legal redress for their injuries by traditional statutes of limitations, which typically commence when the wrong is committed. These statutes provide no legal action can be maintained unless brought within a specified period of time, and, in cases of repressed memory, the victim is often unaware of the wrongful event until well after the statute of limitations has expired. While this may seem unfair or unjust on the surface, statutes of limitation were developed to prevent injustices, not to further them.

■ Statutes of limitation evolved over time with definite purposes in mind. They protect people from being forced to defend themselves against stale claims. The statutes recognize that with the passage of time, evidence becomes more difficult to obtain and is less reliable. Physical evidence is lost or destroyed, witnesses become impossible to locate, and memories fade. With passing time, a defendant faces an increasingly difficult task in formulating and mounting an effective defense. Additionally, statutes of limitation encour-

---

3. Adults who, as children, were sexually abused and have recognized their abuse choose to be called survivors rather than victims. Rebecca L. Thomas, Note, *Adult Survivors of Childhood Sexual Abuse and Statutes of Limitations: A Call for Legislative Action,* 26 Wake Forest L.Rev. 1245 (1991).

age plaintiffs to initiate actions promptly while evidence is fresh and a court will be able to judge more accurately.

█ Statutory time bars on the filing of civil suits, however, do have exceptions. In some cases, plaintiffs do not know when a wrong has occurred and may not discover their cause of action until years after the statute of limitations has expired. In response to such cases, courts and state legislatures fashioned the discovery rule to prevent the injustice which would result from the strict application of the statute of limitations. This doctrine balances the unfairness faced by a plaintiff who is deprived of a verdict against the harm suffered by a defendant in letting the case go to trial after a long delay. Its purpose is to prevent the injustice which would result from the literal application of the statute of limitations in some cases.

The discovery rule has been applied to cases in which survivors of childhood sexual abuse have repressed the memory of the abuse. When applying the rule in cases of previously repressed memories of childhood sexual abuse, courts balance the harm of denying a remedy to a plaintiff who had no access to her memory against the hardships faced by a defendant defending against such longstanding claims.

Many states have responded to the repressed memory dilemma through statutes or case law. At least twenty-four states have adopted special legislation expressly allowing use of the discovery rule in civil actions filed by adult survivors of childhood sexual abuse.[4] These states toll the statutes of

---

4. *See* Alaska Stat. § 9.10.140 (1994); Ark.Code Ann. § 16–56–130 (Michie Supp.1993); Cal.Civ.Proc.Code § 340.1 (West Supp.1996); Colo. Rev.Stat. § 13–80–103.7 (Supp.1993); Fla.Stat.Ann. § 95.11(7) (West Supp.1995); Ill.Ann.Stat. ch. 110, para. 13–202.2 (Smith–Hurd Supp. 1992); Iowa Code Ann. § 614.8A (West Supp.1994); Kan.Stat.Ann. § 60–523 (Supp.1993); Me.Rev.Stat.Ann. tit. 14, § 752–C (West Supp. 1994); Mass.Gen.Laws Ann. ch. 260, § 4C (West Supp.1993); Minn. Stat.Ann. § 541.073 (West Supp.1994); Mo.Ann.Stat. § 537.046 (Vernon Supp.1994); Mont.Code Ann. § 27–2–216 (1993); Nev.Rev.Stat. Ann. § 11.215 (Michie Supp.1993); N.J.Stat.Ann. § 24:61 B–1 (West 1995); N.M.Stat.Ann. § 37–1–30 (Michie Supp.1993); Okla.Stat.Ann. tit. 12, § 95(6) (West Supp.1996); Or.Rev.Stat.Ann. § 12.117 (Supp. 1994); R.I.Gen.Laws § 9–1–51 (Supp.1994); S.D. Codified Laws Ann. § 26–10–25 (Supp.1992); Utah·Code Ann. § 78–12–25.1 (Supp.1994); Vt.Stat.Ann. tit. 12, §§ 522, 560 (Supp.1994); Va.Code Ann. § 8.01–

limitations until the adult survivor of childhood sexual abuse discovers, or reasonably should discover, the elements of the survivor's cause of action.

Further, some courts have applied the discovery rule to toll the applicable statute of limitations for the period during which a victim repressed the memory of the sexual abuse. *See Johnson v. Johnson,* 701 F.Supp. 1363 (N.D.Ill.1988) (superseded by statute) (finding Illinois courts would apply discovery rule when plaintiff has .psychologically repressed memories of childhood sexual abuse); *Hoult v. Hoult,* 792 F.Supp. 143 (D.Mass.1992) (applying discovery rule where plaintiff repressed memory of sexual abuse until after expiration of statute of limitations); *Nicolette v. Carey,* 751 F.Supp. 695 (W.D.Mich.1990) (holding daughter's claim against her father was tolled until she filed suit as daughter showed she had repressed memory of alleged sexual abuse); *Doe v. Roe,* 191 Ariz. 313, 955 P.2d 951 (1998) (discovery rule applies to delay accrual of cause of action based on childhood sexual abuse when plaintiff retrieves repressed memories of the abuse; court applied discovery rule to action brought by woman against her parents for acts of sexual abuse which allegedly occurred when she was between ages of 8 and 15, but memories of which were repressed by woman until she was 34 years old); *Mary D. v. John D.,* 264 Cal.Rptr. 633 (Cal.Ct.App.1989) (court held discovery rule may be applied in case where plaintiff can establish lack of memory of sexual abuse due to psychological repression which took place before plaintiff obtained age of majority, and which caused plaintiff to forget facts of acts of abuse until date subsequent to which complaint is timely filed); *Farris v. Compton,* 652 A.2d 49 (D.C.1994) (discovery rule applicable in case of total repression of memory of childhood sexual abuse); *Peterson v. Huso,* 552 N.W.2d 83 (N.D.1996) (discovery rule tolled statute of limitations until adult victim of alleged childhood sexual abuse, who claimed her memories of the abuse had been repressed until recalled over twenty years later, discovered the abuse); *McCollum v. D'Arcy,* 138 N.H. 285, 638 A.2d 797 (1994) (court applied discovery rule to toll statute of limitations where fifty year old daughter brought sexual assault action against her

249(6) (Michie Supp.1994); Wash.Rev.Code Ann. § 4.16.340 (West 1997).

parents and asserted she repressed all memory of childhood sexual abuse, despite lack of corroborating evidence of the abuse); *Ault v. Jasko,* 70 Ohio St.3d 114, 637 N.E.2d 870 (1994) (discovery rule applies to toll statute of limitations where victim of childhood sexual abuse represses memory of that abuse).

The landmark repressed memory case is *Johnson v. Johnson,* 701 F.Supp. 1363 (N.D.Ill.1988), in which the United States District Court for the Northern District of Illinois held the discovery rule was applicable only to adult survivors of childhood sexual abuse who have no conscious memory of the acts of abuse. In *Johnson,* the victim's father sexually abused her from the time she was three years old until she was approximately thirteen years old. The victim was diagnosed with Multiple Personality Disorder when she sought the help of a therapist at age thirty-two. Until she entered therapy, the victim could not remember the sexual abuse. The court distinguished between cases in which the plaintiff knew the abuse occurred but was not aware the psychological injuries were caused by the sexual abuse, and cases in which the plaintiff repressed all memories of the sexual abuse. The court found the discovery rule was applicable to the latter. However, in 1991, the Illinois legislature amended its Code of Civil Procedure to provide adult survivors of childhood sexual abuse the benefit of the discovery rule in both types of cases.

The theory of repressed memory was expressly accepted by the Supreme Court of Ohio in *Ault v. Jasko,* 70 Ohio St.3d 114, 637 N.E.2d 870 (1994). In *Ault,* a twenty-nine year old plaintiff sued her father alleging he had sexually abused her beginning when she was twelve years old. The trial court granted Father's motion to dismiss on the ground the cause of action was barred by the statute of limitations. On appeal, the Ohio Supreme Court held the discovery rule applied to toll the statute of limitations where a victim of childhood sexual abuse represses memories of that abuse until a later time.

In *Doe v. Roe,* 191 Ariz. 313, 955 P.2d 951 (1998), a woman who had allegedly been a victim of childhood sexual abuse by her father, memories of which she had repressed until adulthood, sued her parents. The trial judge granted summary judgment to the parents based on the statute of limitations.

The Supreme Court of Arizona held the discovery rule applies to delay the accrual of a cause of action based on childhood sexual abuse when the plaintiff represses memories of the abuse. The court explained:

A victim whose memory is inaccessible lacks conscious awareness of the event and thus cannot know the facts giving rise to the cause. The policy behind the discovery rule is thus served by application to repressed memory cases involving childhood sexual abuse and is, we believe, logically appropriate given that the intentional act of the tortfeasor caused both the damage and the repression of memory.

*Doe*, 955 P.2d at 960. The court concluded the issue of accrual of a cause of action under the discovery rule was a question of fact for the jury.

While we have not previously addressed the application of the discovery rule in the context of the present case, the trend in other jurisdictions is to apply the discovery rule where repression of the sexual abuse has prevented the plaintiff from filing a claim within the applicable statutory limitations period. *See Ault v. Jasko,* 70 Ohio St.3d 114, 637 N.E.2d 870 (1994). *See also* Richard A. Leo, *The Social and Legal Construction of Repressed Memory,* 22 Law & Soc. Inquiry 653 (1997) (in over half the states, the statute of limitations no longer precludes plaintiffs from bringing civil suits after discovering previously nonexistent memories of childhood sexual abuse).

Moriarty and the Church acknowledge this is a case of alleged repressed memory of childhood sexual abuse and, as such, is distinguishable from *Doe v. R.D.,* 308 S.C. 139, 417 S.E.2d 541 (1992). In *Doe,* the plaintiff was aware that as a child he had been sexually abused by his father for a number of years. He reached the age of majority in 1973. However, it was not until he was diagnosed with Delayed Stress Syndrome in 1990 that he learned the extent of his injuries. He filed an action in January of 1991. The Supreme Court held:

S.C.Code Ann. Section 15-3-40(1) (Supp.1991) tolls the statute until the plaintiff reaches majority. (Majority is twenty-one on actions accruing before March 14, 1988). Here, the son reached majority under the statute in 1973. The statute, however, does not provide that it is tolled when

the plaintiff action has accrued, yet the plaintiff does not realize the full extent of his injuries. In the case at bar, the son does not claim a disability prevented him from timely filing suit nor does the son claim that he only recently discovered he was sexually abused by his father. Thus, under our present statute, he cannot maintain the action.

*Doe,* 308 S.C. at 141, 417 S.E.2d at 542 (citations omitted). *Doe* did not involve allegations of repressed memory.

In summation, we opine the discovery rule *may* toll the statute of limitations during the period a victim psychologically represses her memory of sexual abuse. We express no opinion as to the viability of Moriarty's case and leave this issue to further proceedings.

### B.   Independently Verifiable Objective Evidence Mandated in Repressed Memory Syndrome Theory

■   Courts, commentators, and the medical community recognize the horrific possibility of false accusations. Responding to this dilemma, courts in some jurisdictions require corroboration of the abuse and the repression of memory of the abuse.

In *Olsen v. Hooley,* 865 P.2d 1345 (Utah 1993), the Utah Supreme Court applied the discovery rule to toll the statute of limitations where the adult plaintiff alleged she completely repressed the memory of childhood sexual abuse until twelve years after the last incident of abuse. The court recognized "this kind of case presents practical difficulties with respect to ascertaining the degree to which memories allegedly repressed and then revived accurately reflect the reality of the past." *Id.* at 1349. The court expressed further concern:

It is common knowledge that memory is not only elastic but malleable, thus raising the possibility that revived memories, even if true, are not entirely accurate. Moreover, questions may be raised with respect to therapeutic methodologies used to revive memories because they may induce memories of events that never happened. The concern with respect to the reliability of memories revived in therapy is a matter of some scholarly debate.

... Because of concerns about the reliability of memory in general to events that occurred long ago, apart from repression, and the difficulty of defending against claims of revived memories of sexual abuse, we think it necessary to require that a plaintiff who alleges repression of memory as a basis for tolling the statute of limitations produce corroborating evidence in support of the allegations of abuse. Corroborating evidence may include, but is not limited to, evidence that a defendant committed similar acts against other persons or evidence of contemporaneous physical manifestations of the abuse.

Although we have held that the discovery rule applies to this action, Olsen still bears the burden of proving at trial that she did in fact repress a memory of actual facts. If the trier of fact determines that Olsen did repress her memory, it must then determine whether there is evidence corroborating the abuse. If the fact finder finds for Olsen on these issues, it must then ascertain at what point Olsen recalled the abuse. It is at that point that the limitations period began to run.

*Olsen,* 865 P.2d at 1349–50 (citations omitted) (footnotes omitted). *See also Meiers–Post v. Schafer,* 170 Mich.App. 174, 427 N.W.2d 606 (1988) (discovery rule could be applied when plaintiff has psychologically repressed memory of sexual abuse, and after memory is revived, there is corroborative evidence events actually occurred); Cal.Civ.Proc.Code § 340.1 (West Supp.1996) (imposing corroboration requirement by statute); Okla.Stat.Ann. tit. 12, § 95(6) (West Supp.1996) (requiring "objective, verifiable" evidence in corroboration).

In *Roe v. Doe,* 28 F.3d 404 (4th Cir.1994), the plaintiff sued her aunt and cousin alleging that, forty years earlier when she was only four or five years old, she was sexually abused by her thirteen year old cousin. The plaintiff maintained her aunt knew or should have known about the abuse. An expert for the plaintiff testified it is common for childhood sexual abuse victims to repress their memory of the abuse for many years. In this case, it was over thirty-five years. The district court granted the defendants' motion for summary judgment based on the statute of limitations.

On appeal, the plaintiff argued the objective standard of the South Carolina statute of limitations applied to the discovery rule by the South Carolina courts should not be applied to repressed recollection cases because "a victim who represses memories of sexual abuse typically develops an impression, even a conviction, that she was abused, before she has an actual memory of the events." *Id.* at 407. The majority explained:

> The Court is prepared to take as true, for purposes of this case, that repressed victims generally and plaintiff in particular can form an impression and conviction of having been abused by another individual as a child, well before they perceive their images as memories. We are required to assume, within reason, that the facts are as plaintiff and her experts allege them to be. What we decline to do is to make the leap urged by plaintiff; that is, to determine that the South Carolina Supreme Court would make an exception to the statute of limitations, or apply it differently, in personal injury cases brought by plaintiffs alleging repressed recollection.

*Roe,* 28 F.3d at 407 (citation omitted).

Although not discussed in the majority opinion, Judge Hall, in a concurrence, enunciated:

> [I]n civil suits for damages based on childhood sexual abuse where the plaintiff had, for a time, allegedly suppressed all memory of the supposed abuse, courts should not allow the discovery rule to toll the statute of limitations absent corroborative evidence of both the abuse and the repression of memory of the abuse....
>
> Corroboration of the act itself could be obtained anecdotally from siblings or other household members, from a documented medical history of childhood sexual abuse, or by the defendant's admission, perhaps via a letter or diary. Evidence of a prior criminal conviction for the abuse at issue could suffice to corroborate, as could evidence that the defendant had sexually abused others—subject, of course, to the rules regarding proof of "other bad acts." Evidence that the plaintiff had actually repressed the memory of the

abuse should be provided only by a psychiatrist or psychologist, and then only after a thorough clinical evaluation. *Roe,* 28 F.3d at 408 (footnotes omitted).[5]

We hold "objective verifiability" is required for the application of the discovery rule. The element of "objective verifiability" may be satisfied by corroborating evidence, for example:

(1) admission by the abuser; or

(2) a criminal conviction; or

(3) documented medical history of childhood sexual abuse; or

(4) contemporaneous records or written statements of the abuser, such as diaries or letters; or

(5) photographs or recordings of the abuse; or

(6) an objective eyewitness's account; or

(7) evidence the abuser had sexually abused others; or

(8) proof of a chain of facts and circumstances having sufficient probative force to produce a reasonable and probable conclusion that sexual abuse occurred.

## C. The Safety Net of Repressed Memory Syndrome: Expert Witness Testimony

■ One of the chimeras posed in a discussion of the repressed memory syndrome theory is the danger of suggestive and implanted memories. This concernment is answered by the requirement of expert witness testimony. Expert psychological testimony imparts to a jury or fact finder the relevant scientific information needed to make a proper evaluation of the repressed memory evidence introduced by the

---

**5.** In *S.V. v. R.V.,* 933 S.W.2d 1 (Tex.1996), the Texas Supreme Court enumerated the kinds of evidence that would satisfy the element of "objective verifiability" required for application of the discovery rule: (1) confession by the abuser; (2) a criminal conviction; (3) contemporaneous records or written statements of the abuser such as diaries or letters; (4) medical records of the person abused showing contemporaneous physical injury resulting from the abuse; (5) photographs or recordings of the abuse; or (6) an objective eyewitness's account. According to the Texas court, "[s]uch evidence would provide sufficient objective verification of abuse, even if it occurred years before suit was brought, to warrant application of the discovery rule." *Id.* at 15.

parties. Further, such testimony provides insight into the facts of the case at hand.

In *Barrett v. Hyldburg*, 127 N.C.App. 95, 487 S.E.2d 803 (1997), an adult daughter brought an action against her father arising from alleged childhood sexual abuse. The trial court granted Father's motion *in limine* to exclude evidence regarding the daughter's alleged repressed memories of sexual abuse. The North Carolina Court of Appeals held the daughter's testimony regarding recovered memories of abuse could not be received at trial absent accompanying expert testimony on the phenomenon of memory repression. The court explained:

"A jury can most assuredly understand the infirmities of memories and the motives that shape them in the normal course of their experience. The jurors are completely capable of evaluating the accuracy of the memory and the credibility of the person testifying from it, by virtue of the ordinary knowledge, common sense, and practical experience by which we all make such determinations in our everyday lives.

However, the very concept of a 'repressed' memory, that is, that a person can experience a traumatic event, and have no memory of it whatsoever for several years, transcends human experience. There is nothing in our development as human beings which enables us to empirically accept the phenomenon, or to evaluate its accuracy or the credibility of the person 'recovering' the memory. The memory and the narration of it are severed from all the ordinary human processes by which memory is commonly understood. To argue that a jury could consider such a phenomenon, evaluate it and draw conclusions as to its accuracy or credibility, without the aid of expert testimony is disingenuous to say the least."

*Barrett*, 487 S.E.2d at 806 (quoting *State v. Hungerford*, 1995 WL 378571, at *3 (N.H.Super.Ct. May 23, 1995), *aff'd and remanded by* 142 N.H. 110, 697 A.2d 916 (1997)). *See also Shahzade v. Gregory*, 923 F.Supp. 286 (D.Mass.1996) (repressed memory beyond understanding of jury; expert testimony appropriate); *State v. Hungerford*, 142 N.H. 110, 697 A.2d 916 (1997) (ordinary jurors cannot be expected to analyze claims of repressed memory without the assistance of ex-

perts); *McCollum v. D'Arcy,* 138 N.H. 285, 638 A.2d 797 (1994) (noting that although discovery rule applied to toll statute of limitations, proponent of recovered memory still bore burden to validate phenomenon of memory repression itself and admissibility of evidence flowing therefrom).

Expressly, we find a plaintiff's testimony regarding recovered memories of abuse may *not* be received at trial absent accompanying expert testimony on the phenomenon of memory repression. Repressed memory syndrome is an area which is outside the common knowledge and experience of most lay persons. *See Spartanburg Regional Medical Ctr. v. Bulsa,* 308 S.C. 322, 417 S.E.2d 648 (Ct.App.1992); *Armstrong v. Union Carbide,* 308 S.C. 235, 417 S.E.2d 597 (Ct.App.1992). The trial judge has the authority to qualify any expert in accordance with Rule 702, SCRE, which provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

## CONCLUSION

We hold the repressed memory syndrome (Dissociative Amnesia) is a valid theory in South Carolina. We conclude the discovery rule *may* toll the statute of limitations in a case of repressed memory of childhood sexual abuse. Further, we find *"independently verifiable objective "* evidence is mandated in every case. Finally, we rule expert opinion testimony is required to prove the abuse and the repressed memory.

Accordingly, we reverse the grant of summary judgment to the Church and remand the case to the Circuit Court for further proceedings consistent with this opinion.

**REVERSED and REMANDED.**

STILWELL, J., concurs.

HOWELL, C.J., concurring in part and dissenting in part in separate opinion.

HOWELL, Chief Judge, concurring in part and dissenting in part:

I fully concur in all parts of the majority opinion except the portion of the opinion involving the type of objectively verifiable evidence necessary to corroborate a repressed memory case. Accordingly, I respectfully dissent as to section II(B) of the majority opinion.

As the majority recognizes, statutes of limitations are necessary to protect against stale and fraudulent claims. *See Santee Portland Cement Co. v. Daniel Int'l Corp.*, 299 S.C. 269, 271, 384 S.E.2d 693, 694 (1989) ("One policy behind the statute of limitations is the protection of a defendant from false or fraudulent claims that might be difficult to disprove if not brought until after relevant evidence has been lost or destroyed and witnesses have become unavailable."), *overruled on other grounds by Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors Division of Unidynamics Corp.*, 319 S.C. 556, 462 S.E.2d 858 (1995). In addition, by establishing an outside time limit for the filing of actions, statutes of limitations allow businesses to make at least rough assessments of their potential liability, and allow insurers to set premiums in accordance with their potential exposure. Of course, given the operation of the discovery rule, statutes of limitations do not allow for absolute certainty when determining potential liability, nor do they offer complete protection against fraudulent claims. Nonetheless, any further erosion of the important protections offered by statutes of limitations must be carefully considered and must strike a fair balance between the interests of plaintiffs and the interests of defendants.

Accordingly, I believe the majority quite correctly requires plaintiffs in repressed memory cases to corroborate their claims through independent, verifiable, objective evidence. While it may well be that some plaintiffs with valid claims will not be able to satisfy this requirement, I strongly believe the requirement is necessary to protect defendants against claims that may be so old that no evidence (other than the defendant's often unpersuasive denial) is available to refute the claim.

I likewise agree with the majority's determination that this corroboration requirement can be satisfied by evidence of an

admission of the abuser, medical confirmation of childhood sexual abuse, and other similar evidence. My sole concern with the majority's opinion is the final type of evidence the opinion suggests will satisfy the corroboration requirement.

The majority opinion states that the requirement of objectively verifiable corroborative evidence may be satisfied by "proof of a chain of facts and circumstances having sufficient probative force to produce a reasonable and probable conclusion that sexual abuse occurred." This is simply a statement of the definition of circumstantial evidence. *See, e.g., State v. Grippon*, 327 S.C. 79, 83–84, 489 S.E.2d 462, 464 (1997) ("Circumstantial evidence is proof of a chain of facts and circumstances indicating the existence of a fact."). Thus, the majority concludes that "objectively verifiable corroboration" can be established through circumstantial evidence. In my view, only some form of direct evidence can satisfy the requirement of objectively verifiable corroboration of the sexual abuse. I simply cannot envision how circumstantial evidence of the sexual abuse could in any way be considered "objectively verifiable" evidence of the sexual abuse. Stated another way, any objective, verifiable evidence of sexual abuse would, by its very nature, be direct evidence of the abuse.[1]

The majority opinion clearly imposes an additional burden on plaintiffs in repressed memory cases by requiring expert testimony to establish the fact of the plaintiff's repressed memory. However, if circumstantial evidence is sufficient to satisfy the corroboration requirement, the requirement becomes meaningless. Plaintiffs will simply present circumstantial evidence supporting the claims of their own abuse, such as evidence of behavioral changes or unexplained fears. While this type of evidence may inferentially establish that *something* happened to the plaintiff, it cannot be considered objective, verifiable evidence that the plaintiff or anyone else was sexually abused. Thus, by allowing plaintiffs in repressed memory cases to corroborate their claims through circumstantial evidence, I believe the majority opinion eviscerates the very corroboration requirement it seeks to impose.

---

1. Of course, direct evidence that the defendant abused *others* might amount to circumstantial evidence that the defendant abused the *plaintiff*. Nonetheless, the objectively verifiable corroboration requirement would be satisfied by the direct evidence of the abuse of others.

Accordingly, I dissent from that portion of the majority opinion. I would hold that circumstantial evidence cannot satisfy the requirement of objectively verifiable corroboration of the plaintiff's claims in a repressed memory case.